This is an appeal by the defendants from a final decree in an action brought by the plaintiffs for sale for division of certain lands, which arose out of the following facts:
Wiley P. Dunn died intestate in 1936, leaving as his sole heirs his widow, Asma Dunn, and eight children. Of these eight children, five were adults and three were minors. At the time of his death, Wiley P. Dunn owned 250 acres of land, mortgaged to the Bank of Berry, Alabama. The land involved in this litigation was included in the total acreage mortgaged to the Bank of Berry.
There was evidence that after Wiley P. Dunn died, and in 1939, Ike Dunn, who along with his wife is a plaintiff in this case; with Dennis Dunn, his brother; Mark Jacobs, the husband of an adult sister; and Talmadge Barger, also a husband of an adult sister, went to the bank and discussed the mortgage on Wiley P. Dunn's property. Thereafter, the bank issued a notice of foreclosure subsequent to which a family meeting was held at the home of Asma Dunn Fields (the mother of the eight children involved herein) at which all members of the family were present. There was evidence that at this meeting, Ike Dunn and Dennis Dunn raised the question about satisfying the mortgage on their father's property. There was some testimony that other members of the family indicated that they had no interest in contributing to the satisfaction of the mortgage. In any event, on October 25, 1939, the Bank of Berry conducted a foreclosure sale and became the purchaser of the property. On the same day, Ike Dunn and Dennis Dunn purchased the property from the bank. They received a deed from the bank and executed a mortgage to the bank for the balance of the purchase price. The mortgage and deed were duly recorded and the mortgage ultimately was paid in full by Ike and Dennis Dunn.
After they purchased the property in 1939, Ike and Dennis Dunn moved onto the property and lived there for approximately two years. While occupying the property they erected a fence, started a farm, and raised cattle. Later, in 1947, they sold 160 acres to Albert Holman Lumber Company. Later they sold timber from the remainder of the property.
There was evidence from which the trier of the facts could conclude that all family members knew that Ike and Dennis Dunn had purchased the land from the Bank of Berry after the foreclosure. It was not disputed that no family member offered to contribute any portion of the purchase price which Ike and Dennis Dunn paid for the property to the Bank of Berry. No member of the family ever offered to contribute to the maintenance of the property, and no one offered to pay any portion of the taxes on the land. Ike and Dennis Dunn have paid taxes on the land since they purchased it.
Other family members did assert an interest in other property which Wiley P. *Page 1175 
Dunn owned at the time of his death, and other lands owned by him were sold for division between all the brothers and sisters.
The parties to this appeal are in agreement that when Wiley P. Dunn died intestate, the real property which he owned passed by operation of law to his heirs, who then became tenants in common. Each owned an undivided one-eighth interest, subject to the life estate in Dunn's widow. They are in agreement that when the property was sold at the foreclosure sale by the mortgagee bank, the tenancy in common was destroyed.
They are also in agreement that when Ike and Dennis Dunn purchased the property from the bank, the title to the property became vested in Ike and Dennis Dunn, subject to the inchoate right in each of the other brothers and sisters to rehabilitate his or her respective interest as a tenant in common by contributing within a reasonable time to the purchase price paid by Ike and Dennis Dunn. The rule applicable to this case was stated succinctly in Salter v. Odom, 240 Ala. 462,199 So. 687 (1940):
 In this jurisdiction it is established by a long line of decisions, that a redemption of property by one cotenant from mortgage, or tax sales, or a purchase before the time of redemption has expired, and the discharge of other liens, will inure to the benefit of all the cotenants, who may, within a reasonable time, elect to avail themselves of the redemption, or of the purchase, by making, or offering to make, their proportionate contribution to the redemption of said property, or its purchase, with interest thereon. [Emphasis added.]
240 Ala. at 464.
To rehabilitate his interest, a non-purchasing cotenant must contribute his share of the purchase price within a reasonable time after he learns of the purchase.
They are also in agreement that the right of a former tenant in common to rehabilitate his cotenancy interest arises whether the redemption is direct or through a succession of transactions. Chatman v. Hall, 246 Ala. 403, 20 So.2d 713
(1945). Therefore, the fact that Ike Dunn and Dennis Dunn did not make the purchase at the redemption sale, but instead purchased from the Bank of Berry, which itself had purchased at the foreclosure sale, is immaterial. The acquisition of title by Ike and Dennis Dunn was for the mutual benefit of themselves and for the benefit of the former cotenants, conditioned upon the right of each former cotenant to rehabilitate his or her cotenancy by contributing within a reasonable time his or her share of the sum paid for redemption with interest and lawful charges. Beavers v. Lanier, 373 So.2d 643 (Ala. 1979); Lehman,Durr Co. v. Moore, 93 Ala. 186, 9 So. 590 (1890).
Therefore, the issue is whether the trial court erred in holding that the former cotenants, both those who were adults at the time of the purchase by Ike and Dennis Dunn and the three minor children, whose right extended to their reaching majority, had failed to exercise their rights within a reasonable time. The time period within which a former cotenant must contribute to rehabilitate his interest does not commence until he has actual knowledge of the reacquisition or redemption. Draper v. Sewell, 263 Ala. 250, 82 So.2d 303
(1955).
There is evidence in this case from which the trial court could have concluded that the heirs of Wiley P. Dunn, who were adults at the time Ike and Dennis purchased the property, did have actual knowledge of the purchase. There was also evidence that at no time has either of the adult cotenants offered to contribute to the purchase price. We need not decide what constitutes a reasonable time in every case following actual knowledge. Suffice it to say that, in this case, the trial court was justified in finding that, inasmuch as no effort had been made since 1939 to rehabilitate their interest in the land, the adult cotenants had not acted within a reasonable time. *Page 1176 
The parties are likewise in agreement that the time for contribution of the three minor heirs did not commence until they attained majority. Those three were Lyman L. Dunn, born March 16, 1933; McWayne Dunn, born August 3, 1930; and Edna Dunn Marcum, born March 2, 1925. Thus, Lyman Dunn attained majority in 1954, McWayne Dunn in 1951, and Edna Dunn Marcum in 1946. Again there was evidence that all three had actual knowledge of the purchase of the property by Ike and Dennis Dunn both before and after attaining their respective ages of majority. Lyman Dunn testified that he had known all of his life that Ike and Dennis Dunn had purchased the property. Edna Dunn Marcum testified likewise. In addition, there was evidence that all of the brothers and sisters, both adults and minors, knew both before and after all had reached majority that Ike and Dennis Dunn had purchased the property. Under these facts we cannot say that the minors acted within a reasonable time after reaching majority to rehabilitate their cotenancy interests by contributing to the purchase price. Whatever might be a reasonable time after attaining majority surely passed at some point prior to 1978, when this action was filed.
Again, Draper v. Sewell, supra, is dispositive on this issue. There the Court held that two minor cotenants had failed to make contribution to the redemption price within a reasonable time when a complaint was filed six and one-half years after one had attained the age of majority and eight and one-half years after the other. Here the lapse of time for the three minor cotenants is twenty-four years, twenty-seven years, and thirty-two years, respectively.
The appellants also argue that when Ike and Dennis Dunn sold a portion of the land and received for that part an amount in excess of the total purchase price paid for the whole, they had then been made whole and, thus, at that point it was no longer necessary for the cotenants to make a contribution or that Ike and Dennis Dunn should be estopped from claiming a contribution from the other heirs. We cannot agree with this position. Neither Ike nor Dennis Dunn was under any obligation to account for the proceeds of the sales of the land or the timber until the former cotenants had rehabilitated their interests.
We agree with the appellants that, generally, a purchase by a cotenant of an outstanding title is presumed to be for the benefit of all of the parties in interest, and that possession by one cotenant is presumed to be possession for the benefit of all. By affirming the trial court in this case, we do not intend to depart from that long-established rule. We simply hold that the trial court was justified in finding that after the cotenants received actual knowledge of the fact that Dennis and Ike Dunn had purchased the property and were claiming it for their own, they did not within a reasonable time elect to avail themselves of the benefit of the purchase of the outstanding interest by offering or tendering a contribution to the purchase price. Nothing held here conflicts with Gilb v.O'Neill, 225 Ala. 92, 142 So. 397 (1932). In that case, however, the offer to make a contribution was within a reasonable time, having been made one year after the plaintiffs learned of the purchase by their fellow cotenant at a tax sale. In this case, however, there is evidence that after the other brothers and sisters knew and had actually been told by Ike and Dennis Dunn that they, Ike and Dennis, were claiming the property as their own, more than thirty-nine years passed before any offer of contribution was made by any party. We think this supports the trial court's conclusion that the former co-tenants did not act within a reasonable time as required by our cases.
The judgment appealed from is therefore affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and ADAMS, JJ., concur. *Page 1177