[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1049 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1050 
This appeal is from the fifth lawsuit arising out of a mortgage foreclosure proceeding and the exercise of a statutory right to redeem 15 acres of land located in Escambia County. The appellant, Dominex, Inc., appeals from the grant of a motion to dismiss the complaint in which it sought to compel the appellee, Albert Key, to accept Dominex's contribution as co-tenant toward the cost of redeeming the subject property and to transfer a one-half interest therein to Dominex. We reverse and remand.
 I
A summary of the relevant facts and prior proceedings follows:
On August 4, 1978, James D. Brunson and his first wife, Marie S. Brunson, jointly acquired the subject 15 acres by deed from Dahlia A. Brunson. They subsequently mortgaged the property to the First National Bank of Atmore for $25,000. Some four years later, James and Marie were divorced by a Florida circuit court; however, the divorce decree did not dispose of the realty owned by the parties.
By warranty deed executed April 30, 1982, James Brunson and his second wife, Terri S. Brunson, purported to convey their "interest" in the subject 15 acres to Joel W. Smith and his wife, Opal O. Smith. (This warranty deed, however, was held by the bank and was not recorded until July 19, 1983.) Thereafter, the First National Bank of Atmore commenced foreclosure proceedings on the mortgage, and, on June 23, 1982, the bank sold the 15 acres by mortgage foreclosure deed to Joel W. and Opal Smith for $25,000.
Following the foreclosure and sale, James and Terri Brunson purported to convey to Dominex, Inc., their statutory right of redemption in the 15 acres by using a quitclaim deed executed February 12, 1983. This quitclaim deed did not mention the statutory right of redemption.
Two days later, James Brunson's first wife, Marie Brunson Cole, joined by her second husband, Roy L. Cole, expressly assigned their statutory right of redemption to Albert W. Key, the appellee herein.
Initially, three complaints were filed by the several parties: first, Dominex filed suit on February 15, 1983, seeking to compel the foreclosure purchasers, Joel and Opal Smith, to permit Dominex to redeem the 15 acres from foreclosure; then, the Smiths filed suit on March 2, 1983, naming Dominex, Brunson, and Key as defendants, seeking a judgment declaring that Brunson had waived his right to redeem, and, therefore, Dominex was estopped from asserting any right of redemption, and further declaring the rights of all parties in or to the *Page 1051 
real estate in question; and, on March 3, 1983, Albert Key filed suit to compel the Smiths to permit him to redeem the property. On motions filed by Key, the circuit court consolidated these three actions on April 21, 1983.
Various motions were filed by the several parties in that consolidated action, but pivotal to these proceedings are the following:
(1) Brunson's motion to dismiss the Smiths' complaint against Brunson;
(2) Amendment filed by Dominex naming Brunson a party plaintiff to its complaint;
(3) Key's motion to strike Dominex's amendment; and
(4) Key's motion for summary judgment. In its final judgment entered May 26, 1983, the circuit court granted Brunson's motion to dismiss and Key's motion to strike, the effect of which was to remove Brunson from the lawsuit; he was not permitted to become a party plaintiff and was dismissed as a party defendant.[1]
The trial court also granted Key's motion for summary judgment:
 "ORDERED, ADJUDGED and DECREED that the Motion for Summary Judgment filed on behalf of Plaintiff, Albert W. Key be and hereby is granted in favor of said Albert W. Key and against all other parties in the above consolidated causes and against all claims and defenses advanced on behalf of such other parties.
 "Albert W. Key has in all respects met the statutory requirements for redemption of the land in question and has in fact redeemed said land according to the Code of Alabama of 1975, § 6-5-230 et seq.
The Court further finds that no other party to said consolidated causes has redeemed said land nor has any other party complied with the statutory requirements for redemption and that the redemption of said lands by Albert W. Key extinguished further redemption rights in said property as a matter of law."
Further, despite the yet unrecorded warranty deed executed prior to foreclosure by Brunson to Joel and Opal Smith, the court found that the Smiths, as the mortgage *Page 1052 
foreclosure purchasers "obtained title to said property by fee simple determinable and said fee was determined by Albert W. Key's redemption." Dominex did not appeal this judgment.
On June 10, 1983, James and Terri Brunson purported to expressly assign their statutory right of redemption to Dominex, which Dominex contends still existed, notwithstanding the May 26th judgment extinguishing all further redemption rights in the property as a matter of law and from which no appeal was taken by Dominex.
Assuming Brunson's post-judgment status to be that of co-tenant with Key, and Dominex's status to be that of assignee of Brunson's statutory right of redemption, Dominex tendered to Key $24,333.88 in contribution for one-half of the amount Key was required to pay to redeem the property from foreclosure. Key refused this tender. Dominex then proceeded with the present action, filed June 21, 1983, to compel Key to accept its contribution toward redemption and to grant to Dominex a one-half interest in the property. The circuit court granted Key's motion to dismiss on the basis of the prior judgment in the three consolidated actions and for the reasons stated in Key's motion, including Dominex's lack of standing to bring the action. Dominex appeals from the grant of Key's motion to dismiss, which was in fact summary judgment because evidence was introduced in support of Key's motion to dismiss. Rule 12 (b)(6), A.R.Civ.P.
The following is a summary of the transactions and the procedural history of this case:
1978 ---- August 4 James and Marie Brunson purchased the 15 acres and executed a mortgage to First National Bank of Atmore.
1982 ---- March 16 James and Marie Brunson divorced without disposing of the 15 acres.
April 30 James Brunson and second wife, Terri, by warranty deed conveyed the 15 acres to Joel and Opal Smith.
June 23 First National Bank foreclosed on the mortgage and sold the 15 acres to Joel and Opal Smith.
1983 ---- February 12 James and Terri Brunson executed a quitclaim deed of the 15 acres to Dominex, Inc.
February 14 Marie Brunson Cole and second husband, Roy Cole, assigned their right to redeem the 15 acres from foreclosure to Albert W. Key.
February 15 Dominex filed suit to compel the Smiths to allow Dominex to redeem.
March 2 The Smiths filed a declaratory judgment action against Brunson, Dominex, and Key, seeking to prevent redemption of the property.
March 3 Key filed suit to compel the Smiths to allow Key to redeem.
April 21 The above three lawsuits were consolidated.
May 26 James Brunson was effectively dismissed as a party to the consolidated lawsuit, and summary judgment was entered in favor of Albert Key.
June 10 James Brunson expressly assigned his statutory right of redemption to Dominex.
June 21 Dominex filed the instant suit against Key seeking to compel Key to allow Dominex, as co-tenant, to contribute one-half the cost of redemption, and grant Dominex one-half interest in the property.
July 19 Joel and Opal Smith recorded the April 30, 1982, warranty deed from James and Terri Brunson, which prior thereto had been held by the First National Bank.
September 7 Trial court granted Key's motion to dismiss Dominex's complaint.
 II
Resolution of the particular issues presented by this appeal necessitates a review and clarification of the law of redemption, both equitable and statutory.
When real property in Alabama is mortgaged, the legal title passes to the mortgagee and the mortgagor retains the equity of redemption, which he may convey. First National Bank of Mobile,v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala. 1981). If the mortgagor conveys his equity of redemption, his grantee succeeds to this right of redemption, effectively standing in his grantor's (the mortgagor's) shoes. Flirt v. Kirkpatrick,175 So.2d 755, 278 Ala. 61 (1965); *Page 1053 Rumage v. Dry Dock Savings Bank, 278 Ala. 526, 179 So.2d 277
(1965). Consequently, because only those with an interest in the property can redeem, a mortgagor who has conveyed his equity of redemption cannot seek to redeem the property, before or after foreclosure. Rumage, supra; Cardwell v. Virginia StateIns. Co., 186 Ala. 261, 65 So. 80 (1914). A valid foreclosure sale of property subject to a mortgage extinguishes the equity of redemption; however, by virtue Code of 1975, § 6-5-230, set forth below, a post-foreclosure right of redemption arises in the mortgagor or his vendee:
 "Where real estate, or any interest therein, is sold under execution or by virtue of any judgment in a court of competent jurisdiction or under any deed of trust or power of sale in a mortgage, the same may be redeemed by the debtor, junior mortgagee, vendee of the debtor or assignee of the equitable or statutory right of redemption, wife, widow, child, heir at law, devisee or any vendee or assignee of the right of redemption under this Code from the purchaser or his vendee within one year thereafter in the manner provided in this article."
Unlike the equity of redemption, which exists prior to foreclosure and is deemed an interest in the property, thestatutory right of redemption arises after foreclosure and is a mere personal privilege conferred by statute; it is not property or a property right:
"§ 6-5-246
 "The statutory rights of redemption given or conferred by this article are mere personal privileges and not property or property rights. The privileges must be exercised by the person and in the mode and manner prescribed by statute. The right or privilege conferred under this article is not subject to levy and sale under execution or attachment nor is it subject to alienation except in the cases provided for in this article; but if the right or privilege is perfected by redemption as provided in this article, then, and not until then, does it become property or rights of property subject to levy, sale, alienation or other disposition, except as is expressly authorized by statute."
Because a statutory right of redemption is not property or a property right, a deed executed by the mortgagor or his vendeeafter foreclosure which purports to convey title to or an interest in the property would be ineffective as an assignment of the statutory right of redemption. This reasoning was applied in Wilson v. Mikul, 257 Ala. 112, 113, 57 So.2d 628,629 (1952):
 "The law is settled that a quitclaim deed executed after foreclosure of a mortgage purporting to convey title to the real property covered by the mortgage does not operate as an assignment of the statutory privilege of redemption, unless the privilege of redemption is assigned in expressed terms. [Citations omitted.]"
Thus, such an assignment must be express.
The Court in Wilson v. Mikul, 257 Ala. at 113,57 So.2d at 629, cited with approval the case of Upchurch v. West, 234 Ala. 604,176 So. 186 (1937), for the proposition that "a quitclaim deed executed prior to foreclosure while the grantor has the equity of redemption, which is cut off by foreclosure, leaves the grantee in such deed with the privilege of redemption under the statutes." In Upchurch, Samford Bros., Inc., purchased the equity of redemption from the mortgagor, A.C. Samford, beforeforeclosure. Then, as stated by the Court in that case:
 "On October 18, 1933, a few days short of nine months after the foreclosure was had, the said Samford Bros., Inc., for a recited consideration of $1,000 and other valuable considerations to it in hand paid by J.R. Upchurch (complainant here) executed a deed to said Upchurch, in and by which it conveyed to said grantee the said property. This deed contained full covenants of warranty." (Emphasis added.) 234 Ala. at 607, 176 So. at 188.
The Court went on to hold:
 "We entertain no doubt whatever but that the deed from Samford Bros., Inc., *Page 1054 
was efficacious to vest in the said Upchurch the statutory right of redemption which the statute conferred upon the said Samford Bros., Inc., who had purchased the equity of redemption from the said A.C. Samford and wife before the foreclosure was had. This deed conveyed to the complainant, without limitation or qualification, any right, title, interest, claim and estate that the grantor may have owned in the property, and this was certainly sufficient to convey and assign to the grantee any statutory right of redemption the debtor may have had as to the property. There is nothing in the cited cases of Lewis v. McBride, 176 Ala. 134, 57 So. 705, and Leith v. Galloway Coal Co., 189 Ala. 204, 66 So. 149, which conflicts in the least with the present holding." (Emphasis added.) 234 Ala. at 608, 176 So. at 189.
Clearly, this holding in Upchurch directly conflicts with the holding in Wilson v. Mikul, supra. We find Wilson to be the correct result under the plain language of the statute, and to that extent, Upchurch is overruled. The language of § 6-5-246 is clear that a statutory right of redemption is not an interest in property, and a conveyance of an interest in theproperty will not suffice as an assignment of the personal privilege afforded by the statute to redeem the property after foreclosure.
 III A.
The threshold issue in this case is whether Dominex is precluded from asserting its claim by the doctrines of res judicata or collateral estoppel.
On appeal, Dominex argues that the May 26th judgment granting exclusive redemptive rights in the property to Albert Key did not deprive Brunson of his statutory right of redemption as co-tenant in the property and his attendant right to contribute one-half the cost toward redeeming the property, thus "rehabilitating" his interest therein. Dominex also argues that the prior judgment did not preclude Brunson from assigning those statutory redemptive rights to Dominex, who could exercise them by tendering contribution to Key.
Key contends, among other things, that Dominex's claim to a one-half interest in the property under the above described theory is precluded by res judicata and collateral estoppel, because Dominex's claim reaches a matter which might or ought to have been raised in the prior litigation. We disagree and find that Dominex's claim is not barred by either res judicata or collateral estoppel.
The elements of res judicata were set out by this Court inWheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190,1199 (Ala. 1978), affirmed, 385 So.2d 47 (Ala. 1980):
 "Res judicata and collateral estoppel (estoppel by judgment) are two separate rules or sets of rules for determining the conclusiveness of judgments. See Webster v. Gunter, 336 So.2d 170, 172 (Ala. 1976) (Almon, J., concurring specially).
 "The elements of res judicata are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits. Stevenson v. International Paper Co., 516 F.2d 103 (5th Cir. 1975). If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action. McGruder v. B L Construction Co., 331 So.2d 257 (Ala. 1976)."
The first three elements of res judicata are clearly present in this case. The remaining issue under that doctrine is whether the cause of action is the same in both the original action and the present action. The determination of this depends on whether the issues in the two suits are the same and whether the same evidence would support a recovery in both suits. Geer Brothers, Inc. v. Crump, 349 So.2d 577 (Ala. 1977), quoting Sessions v. Jack Cole Co., 276 Ala. 10, 158 So.2d 652
(1963). *Page 1055 
While we do not undertake to rule on the correctness of the prior judgment, we must, nevertheless, examine the issues and the evidence that were before the court in order to determine whether the causes of action in these two lawsuits are the same.
The primary issue before the court in the prior lawsuit was which of the parties had the statutory right to redeem the subject property from the foreclosure purchasers. The evidence advanced by each of the parties in support of their respective rights was as follows: First, Dominex asserted that it had acquired the statutory right to redeem by virtue of its quitclaim deed executed after foreclosure by James Brunson, who remained a co-tenant in the property with Marie Brunson Cole following their divorce. Key, on the other hand, asserted his right to redeem on the strength of the express assignment from Marie Brunson Cole of her statutory right of redemption after foreclosure.
As we recognized above, a mere quitclaim deed executed after foreclosure is ineffective as a transfer of the statutory right of redemption. An express assignment of that statutory privilege is required. We assume the trial court applied this rule in entering summary judgment in favor of Key and against Dominex.[2] We note here that this determination of the ineffectiveness of the quitclaim deed, under which Dominex asserted its rights, does not operate as an adjudication of the issue of whether Brunson, Dominex's grantor, had the statutory right to redeem at the time he executed the quitclaim deed to Dominex. Clearly, under the law of redemption enunciated above in Part II, Brunson had no interest in the property after foreclosure. As previously pointed out, Brunson was effectively removed as a party to the prior litigation. The trial court refused to permit Dominex to amend its complaint to add him as a party-plaintiff, and, therefore, Brunson could not assert his statutory right to redeem in those proceedings. Thus, Brunson's post-foreclosure rights were not before the court. Nor was a determination thereof implicit in the judgment for Key and against Dominex.[3] The trial court did not have to reach the issue of Brunson's interest in order to rule against Dominex because of the ineffective quitclaim deed. Dismissal of Brunson as a party is indicative of this. Consequently, the only material evidence before the Court in the prior proceeding, on the issue of who (as between Dominex and Key) could statutorily redeem, was the quitclaim deed and the express assignment.
In the present lawsuit, however, different evidence and different issues were before the trial court. It is reasonable to conclude from the events before and after the entry of summary judgment for Key that both Brunson and Dominex realized the ineffectiveness of the quitclaim deed. Dominex first sought to amend its complaint by adding Brunson as a party plaintiff, but was not permitted to do so. And, rather than appealing the judgment for Key and thereby proceeding on the strength of an invalid transfer, Brunson expressly transferred to Dominex his "statutory right of redemption together with all other related rights of redemption or any right whatsoever in and to" the subject property. Then, Dominex, as assignee of a co-tenant, brought suit to compel Key, who had refused tender by Dominex, to accept its contribution toward the cost of redemption.
By virtue of this new evidence, i.e., the express transfer by Brunson, and the prior statutory redemption of the property by *Page 1056 
Key, new issues are presented, which were not settled or determined by the prior lawsuit: (1) Did James Brunson, as a co-tenant, have the statutory right to redeem the property after foreclosure? (2) If he did, does redemption by Key extinguish the right James Brunson had because the property may be redeemed only once? (3) Is statutory redemption as between co-tenants a race of diligence, or does the law in Alabama recognize the equitable right of a co-tenant (Brunson) to make a timely contribution to the redeeming co-tenant (Key) and thus share in the redemption, notwithstanding the fact that foreclosure extinguished the Brunsons' interests in theproperty? (4) If the law recognizes such an equitable right, is it assignable or transferable? (5) If this right is assignable or transferable, was the transfer executed by James Brunson on June 10, 1983, effective to transfer this right?
Concluding that the issues in the two lawsuits are different, we further find that the evidence supporting the recovery for Key in the first action does not preclude the recovery sought by Dominex in the present action.
Because the causes of action in the prior and present lawsuits are different, we conclude that the present action is not barred by res judicata. Nor is the present action barred by collateral estoppel, which "operates where the subsequent suit between the same parties is not on the same cause of action."Wheeler v. First Alabama Bank of Birminaham, supra:
 "Requirements for collateral estoppel to operate are (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment. Stevenson v. International Paper Co., supra. If these elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit. Gulf American Fire Casualty Co. v. Johnson, 282 Ala. 73, 209 So.2d 212 (1968)." 364 So.2d at 1199.\
As explained above, the present action presents new issues that were not litigated in the prior action. Nor was resolution of these issues necessary to the prior judgment, which determined that Key had validly obtained the statutory right to redeem and had complied with the redemption statutes.
 B.
We shall now proceed to address the merits of this appeal. Besides the issues outlined above, Key raises the issues of estoppel and waiver. First, Key argues that because of the warranty deed to the Smiths executed by Brunson on April 30, 1982, Brunson is estopped from transferring to Dominex any rights he may have in or to the subject property. Second, Key argues, if Brunson is deemed to have any rights, those rights would pass to the Smiths under the doctrine of after-acquired title, and not to Dominex. Key also contends, in essence, that Dominex cannot be a bona fide purchaser from Brunson, because it took Brunson's post-judgment transfer with actual knowledge of the prior warranty deed from Brunson to the Smiths, and with notice that the grantees thereto (the Smiths) were claiming through it. Third, Key argues that, notwithstanding the warranty deed, Brunson's denial of any interest in the property, through his pleadings and letter brief filed in the prior proceedings, operates as a waiver of any interests he may have and estops him from making any subsequent transfers.
 1. Estoppel by Deed.
In response to Key's arguments regarding the effect of the Smiths' warranty deed, Dominex argues that the deed was ineffective to convey title or serve as a basis for estoppel because there was no delivery of the deed. We find that the issue of the validity of the warranty deed is res judicata. Implicit in the final judgment in the prior consolidated proceeding, as well as in another lawsuit filed by the Smiths the day after Dominex filed the present suit, is the conclusion that this *Page 1057 
warranty deed was invalid and ineffective to transfer title to the Smiths.
In their original complaint in the consolidated proceeding, the Smiths admitted that "[t]he original deed in question is still being held by the First National Bank of Atmore, and the same has not been delivered to anyone as of [the date this complaint was filed]." The court, in its final judgment, held that the Smiths, as the mortgage foreclosure purchasers, "obtained title to said property by fee simple determinable and said fee was determined by Albert W. Key's redemption." Under the law of redemption, enunciated above, had the warranty deed been effective, the Smiths would have thereby acquired Brunson's equity of redemption. Notwithstanding that they were also the foreclosure purchasers, the Smiths, had they acquired Brunson's equity of redemption prior to foreclosure, upon foreclosure would have succeeded to his statutory right of redemption and been able, in effect, to redeem from themselves. The prior judgment, however, held otherwise and determined their interests to be only those of foreclosure purchasers.
On May 27, 1983, the day after final judgment was entered in the consolidated action, the Smiths sought to amend their complaint to allege that the warranty deed was delivered to them on the date of its execution. This post-summary judgment amendment had no effect. Stallings v. Angelica Uniform Co.,388 So.2d 942 (Ala. 1980); Papastefan v. B L Construction Co.,356 So.2d 158 (Ala. 1978). Then, on June 22, 1983, (the day after Dominex filed the present suit against Key), the Smiths filed a new lawsuit against Key, claiming under the warranty deed and alleging the same co-tenancy theory advanced by Dominex herein. The trial court entered summary judgment against the Smiths on July 18, 1983, "by reason of estoppel by deed, estoppel by pleadings, issue preclusion and res judicata
and lack of standing of Plaintiff to maintain said cause." The next day, the Smiths recorded the warranty deed. No appeal was taken from the July 18th judgment, but on August 5, 1983, the Smiths filed notice of appeal to this Court from the May 26th judgment. Subsequent to their notice of appeal, the Smiths entered into a settlement agreement with Key, and, on joint motions of the parties, this Court dismissed the Smiths' appeal on October 3, 1983. From the foregoing, the preclusive effect of the prior judgments is clear. The issue remains, nevertheless, as to whether an invalid deed can operate as an estoppel. We note a paucity of Alabama law on this issue.
Generally, estoppel by deed against the grantor or those in privity with him may be invoked only in an action on the deed itself brought by the grantee or those in privity with him.Howard v. Perkins, 229 Ga. 279, 191 S.E.2d 46 (1972); Hughes v.Cobb, 195 Ga. 213, 23 S.E.2d 701 (1942); 31 C.J.S. Estoppel §§ 10, 13, 46 (1964). This follows from the general rule that the party claiming the benefit of the estoppel must show he was induced to change his course or position because of statements or representations in the deed. Storey v. Patterson,437 So.2d 491 (Ala. 1983); Hendricks v. Blake, 291 Ala. 575, 285 So.2d 82
(1973); 31 C.J.S. Estoppel § 10. Moreover, an invalid instrument will not serve as the basis of an estoppel by deed, even though it may contain covenants of warranty. Clark v.Bird, 158 Ala. 278, 48 So. 359 (1909); Harden v. Darwin Pulley, 77 Ala. 472 (1884); Consolidation Coal Co. v. Riddle,198 Ky. 256, 248 S.W. 530 (1923); 31 C.J.S. Estoppel §§ 17, 43 (1964).
Applying the foregoing principles to the facts of this case, we conclude that Key cannot assert estoppel by deed against Brunson or Dominex. First, this is not an action on the deed itself. Second, Key is not in privity with the Smiths, nor has he shown he relied to his detriment on the contents or the validity of the deed. Third, as we pointed out above, the prior judgments concluded that the deed was invalid, and, therefore, it may not serve as the basis of an estoppel by deed. *Page 1058 
 2. After-acquired Title.
The doctrine of after-acquired title is a form of estoppel by deed. It operates to estop a grantor, who executes a deed purporting to convey land to which he has no title or to which he has a defective title at the time of the conveyance, from claiming in opposition to his deed as against the grantee or any person claiming title under him, when such grantor afterward acquires a good title to the land. The chief theory upon which the doctrine rests is that the deed operates on the after-acquired title by way of an estoppel. 23 Am.Jur.2d Deeds
§ 341 (1983).
There are certain limitations upon the doctrine of estoppel by deed as it concerns an after-acquired title: One seeking to invoke the doctrine must have some right or interest in the premises, and application of the doctrine presupposes that the instrument relied upon is valid and effective to operate as a conveyance. 23 Am.Jur.2d Deeds §§ 342, 335 (1983). See alsoRogers v. Snow Brothers Hardware Co., 186 Ark. 183,52 S.W.2d 969 (1932); Dailey v. Springfield, 144 Ga. 395, 87 S.E. 479
(1915).
We find the doctrine inapplicable to this case for several reasons. First, at the time the deed was executed, Brunson's title to his one-half interest in the property was not defective. And, as pointed out above, Key is not claiming title under the Smith deed, although he does have "some right or interest in the premises." Nor is the validity or effectiveness of the Smith deed subject to challenge in this lawsuit, that issue having been precluded by the prior judgments against the Smiths. Consequently, Dominex cannot be charged with actual notice of a prior effective conveyance by Brunson. The judgment in the prior consolidated proceedings, wherein Dominex sought to challenge the validity of the Smith deed, was rendered prior to Brunson's transfer of his statutory right of redemption to Dominex.
 3. Equitable Estoppel and Waiver.
Key contends that, notwithstanding the warranty deed, Brunson's denial of any interest in the property, through his pleadings and letter brief filed in the prior proceedings, operates as a waiver of any interests he may have and estops him from making subsequent transfers.
 "The essential elements of equitable estoppel are: (1) the person against whom estoppel is asserted, who usually must have knowledge of the facts [or at least the circumstances must be such that knowledge of them is necessarily imputed to him], communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on; (2) the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon that communication; and (3) the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct. Mazer v. Jackson Ins. Agency, 340 So.2d 770, 773 (Ala. 1976)." General Electric Credit Corp. v. Strickland Division of Rebel Lumber Co., 437 So.2d 1240, 1243 (Ala. 1983).
Furthermore, the law is settled in Alabama that a party in a pending suit who has knowledge of the facts may be precluded from assuming a position inconsistent with a position taken in a prior judicial proceeding to the prejudice of an adverse party. Brooks v. Peoples National Bank of Huntsville,414 So.2d 917 (Ala. 1982); Henson v. McDonald, 413 So.2d 1135 (Ala. 1982); Russell v. Russell, 404 So.2d 662 (Ala. 1981); UnitedSecurity Life Ins. Co. v. Birmingham Trust National Bank,282 Ala. 295, 211 So.2d 139 (1968); Hartley v. Alabama NationalBank of Montgomery, 247 Ala. 651, 25 So.2d 680 (1946); LeFurgeyv. Beck, 244 Ala. 281, 13 So.2d 179 (1943). Waiver, on the other hand, is the voluntary and intentional surrender or relinquishment of a known right. See O'Neal v. O'Neal, 284 Ala. 661, 227 So.2d 430 (1969); State Farm Mutual Automobile *Page 1059 Ins. Co. v. Hubbard, 272 Ala. 181, 129 So.2d 669 (1961).
The "inconsistent position" alleged by Key to have been taken by Brunson in the prior proceeding was as follows: In Brunson's motion to have himself dismissed as a defendant in the Smith complaint, he alleged as grounds, among other things, "that he has no interest in this matter as is evidenced by his" quitclaim deed to Dominex. Further, in his letter brief filed in support of his motion, Brunson stated that "he no longer has an interest in this controversy and evidence that fact by the quitclaim deed." But, later, apparently realizing that an issue existed as to the effectiveness of this quitclaim deed to transfer a statutory right of redemption, Dominex and Brunson, by amendment, sought to include and confirm that James Brunson was a party plaintiff to Dominex's complaint. The final judgment granted Brunson's motion to dismiss and Key's motion to strike this amendment.
From the foregoing, we conclude that, at the time Brunson assumed the position of "no interest," he did not have knowledge of the fact that the quitclaim was ineffective to transfer the only interest he could have had at that time — the statutory right of redemption. Furthermore, his failure to assert that right, resulting from ignorance of the fact that he had not conveyed that right, does not constitute estoppel if he commences his remedial action with promptness after becoming acquainted with the facts. Ivey v. Dixon Investment Co.,283 Ala. 590, 219 So.2d 639 (1969); Nelson Realty Co. v. DarlingShop of Birmingham, 267 Ala. 301, 101 So.2d 78 (1958). This rationale was explained in LeFurgey v. Beck, 244 Ala. 281,13 So.2d 179 (1943), where estoppel is based on prior proceedings:
 "Inconsistent positions in different litigations, where the party failed of benefit from the former position, through mistake of fact, or mistake as to rights of property in certain cases, does not ordinarily estop the party from asserting the true facts. This is quite different, in principle, from setting up a fraudulent claim on simulated facts, burdening the other party with long delay in the enjoyment of property rights, admittedly his in that proceeding, but for the fraudulent claim asserted, and the burden of protracted litigation to defeat the fraudulent claim, to be followed by suit in equity founded on another and conflicting state of facts, all known to complainant from the beginning."
(Emphasis added.) 244 Ala. at 284, 13 So.2d 179.
Furthermore, in view of Brunson's apparent mistake as to the effectiveness of his deed and his attempt to assert his own right to redeem by joining the prior lawsuit, we cannot conclude that Brunson voluntarily and intentionally relinquished (waived) a known right. Consequently, we hold that nothing in the prior lawsuit operates as an estoppel or waiver by Brunson of his statutory right to redeem and his subsequent right to transfer to Dominex.
 C.
Next, we address the issues involving James Brunson's post-foreclosure and post-redemption rights and their assignability.
As previously stated, James Brunson in 1978 jointly acquired the subject 15 acres with his first wife Marie by a deed which contained a right of survivorship clause. The Brunsons' divorce decree, however, did not in any way dispose of or even address the question of jointly owned property. Key contends that the Brunsons' divorce destroyed the relationship giving rise to the joint ownership. This contention is clearly contrary to the settled law in this state. In Summerlin v. Bowden, 286 Ala. 391, 240 So.2d 356 (1970), this Court recognized the rule that a divorce decree which is silent with respect to property held jointly with a right of survivorship does not automatically destroy the estate. Accord, Watford v. Hale, 410 So.2d 885
(Ala. 1982). Also, in Coffelt v. Coffelt, 390 So.2d 652
(Ala.Civ.App. 1980), the Court of Civil Appeals, on similar facts, held that where the divorce decree does not mention jointly owned land each party retains the same right, title, *Page 1060 
claim, or interest therein which they were granted by the conveyance to them. The court there explained:
 "When the trial judge did not alter ownership, that, in and of itself, disposed of the issue. In a divorce action, there is no requirement that the joint ownership of property by the parties be abolished and that title be vested in only one spouse. In such cases, an equitable and open division of jointly-owned property might well be no division thereof with the title to that particular property being left undisturbed by the judgment." 390 So.2d at 653.
Therefore, the Brunsons' interest in the property remained unchanged by the divorce. Furthermore, finding as we have that the prior judgment implicitly held the Brunson-Smith warranty deed invalid, we conclude that James Brunson and Marie Brunson Cole continued as joint tenants until the property was sold to the Smiths at the foreclosure sale by the mortgagee bank, such sale destroying their joint tenancy. See Reed v. Dunn,392 So.2d 1173 (Ala. 1981).
Yet, in each arose a post-foreclosure statutory right to redeem the property under § 6-5-230, supra. Marie Brunson Cole validly assigned her statutory right to redeem the entire property to Albert Key, who redeemed from the Smiths following summary judgment in his favor in the prior actions. James Brunson, on the other hand, made an invalid transfer of his right to Dominex (via a quitclaim deed), and it was not until after Key had redeemed that Brunson sought to execute a corrective transfer of his post-redemption rights.
Clearly, under the rule stated in Salter v. Odom, 240 Ala. 462,199 So. 687 (1940), and followed in Reed v. Dunn, supra, upon Key's redemption, title vested in Key subject to the inchoate right of James Brunson to rehabilitate his interest as a co-tenant by contributing within a reasonable time to the purchase price paid by Key:
 "In this jurisdiction it is established, by a long line of decisions, that a redemption of property by one cotenant from mortgage, or tax sales, or a purchase before the time of redemption has expired, and the discharge of other liens, will inure to the benefit of all the cotenants, who may, within a reasonable time, elect to avail themselves of the redemption, or of the purchase, by making, or offering to make, their proportionate contribution to the redemption of said property, or its purchase, with interest thereon. [Citations omitted.]" (Emphasis added.) 240 Ala. at 464, 199 So. at 688.
See also Chastang v. Washington Lumber and Turpentine Co.,267 Ala. 390, 102 So.2d 899 (1958), holding that a joint owner or tenant in common who redeems from a tax sale is generally said to act for the benefit of all joint owners, if such right is seasonably exercised.
Under the joint title with survivorship held by James Brunson and Marie Brunson Cole before foreclosure, neither party could convey the entire property. Each owned a one-half interest in the property while, at the same time, each owned the whole. A pre-foreclosure conveyance by either of his or her one-half interest would have destroyed the joint tenancy and created a new tenancy in common, with the grantee owning a one-half interest as tenant in common with the non-conveying joint tenant, thereby destroying the survivorship interest. See generally, Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972).
The same principles of co-tenancy ownership apply to post-foreclosure assignments of the right to redeem. Once a co-tenant or his assignee redeems, the title is restored, with legal title vesting in all of the co-tenants. Braly v. Polhill,231 Ala. 633, 166 So. 419 (1936). We are not persuaded that, merely because Key was the assignee of a cotenant's (Marie Brunson Cole's) statutory right to redeem, his redemption of the property operated to destroy James Brunson's inchoate right as a co-tenant to contribute. Such reasoning would sanction a "race of diligence" between *Page 1061 
cotenants to redeem the property after foreclosure, and thus create a vehicle by which one co-tenant would be permitted to act with respect to the property to the prejudice of the other, contrary to settled principles of law regarding cotenancy and joint ownership:
 "`A tenant in common has the right to relieve the common property from a lien or encumbrance, and may make a valid tender of payment of the whole mortgage debt on behalf of his cotenants, and acts of this nature done in relation to the general interest in the whole common property are presumed to have been done bona fide for the common benefit, and generally a purchase by a cotenant of an outstanding title being presumed to be for the benefit of all parties in interest is not void, passing title subject to the rights of other cotenants. But one tenant in common will not be permitted to inequitably acquire title to the common property, solely for his own benefit or to the exclusion of his cotenants, the general rule being that the purchase or extinguishment of an outstanding title to, encumbrance upon, or claim against the common property by one tenant in common inures to the benefit of all the co-owners, who may within a reasonable time elect to avail themselves of the benefit of the purchase of the outstanding interest or conflicting claim or the removal of the emcumbrance from the common property.'" Gilb v. O'Neill, 225 Ala. 92, 95-96, 142 So. 397, 400 (1932).
Accord, Taylor v. Jones, 280 Ala. 329, 194 So.2d 80 (1967).
Key further argues that even if Brunson had the inchoate right to contribute, that right is not assignable. Further, if such right is assignable, the instrument under which Dominex now claims was an ineffective transfer of that right because it was entitled a "Transfer of Right of Redemption." We disagree.
First, the case of Braly v. Polhill, supra, resolves in favor of Dominex the issue of whether an inchoate right to contribute is assignable. In that case, at the time of foreclosure in 1933, the property was jointly owned by T.C. Eubank, who owned a five-eighths interest therein; Kate Eubank, one-eighth; Rebecca E. Taylor, one-eighth; William D. and Martha A. Eubank, each one-sixteenth. When the mortgagee bank foreclosed, it sold the property to Stout at the foreclosure sale, and in May 1934, Stout conveyed to Polhill. Six months later, Kate Eubank and Dixie Yearwood (who had no right whatsoever in the property) statutorily redeemed the property from Polhill and conveyed the same to Braly. Sometime after that, T.C. Eubank and Rebecca E. Taylor granted to Polhill their right to contribute their proportionate share toward the redemption. Then Polhill brought suit against Braly to allow her to redeem these shares from him. In upholding Polhill's "right to contribute the due proportion of her grantors of the outlay by the grantors of [Braly] in redeeming the property and a rehabilitation of her title," the court held:
 "Where in the circumstances a deed is essential to perfect the redemption and deed is made to the co-tenant or party redeeming, the legal title vests in the redemptioner in trust and the equitable title in all the cotenants. [Citations omitted.]
 "The right thus acquired, not being a mere right of action, but title, is the subject of bargain and sale . . . ." (Emphasis added.) 231 Ala. at 635, 166 So. at 421.
Thus, the court in Braly recognized that, unlike the statutory right of redemption, a co-tenant's right to contribute his proportionate share of the redemption is more than a mere right of action; legal title having been restored by redemption, the non-redeeming co-tenant's interest ripens into an equitable title, and is, therefore, conveyable.
Finally, more important than the lable given the instrument under which Dominex claims is the actual granting language contained therein: *Page 1062 
 "I, JAMES E. BRUNSON, herein joined by my wife, Terri S. Brunson, do hereby remise, release, quit claim, transfer, sell and convey to the said DOMINEX, INC., my statutory right of redemption together with all other related rights of redemption or any right whatsoever in and to that certain property. . . ."
This granting language clearly reflects an intention on the part of James Brunson to convey to Dominex any and all of his interest in the property, in the same manner as a normal quitclaim deed. Beyond this, in view of the quitclaim deed executed prior to Key's redemption, it is possible the doctrine of after-acquired title, discussed supra, would operate to vest Brunson's equitable title in Dominex.
For the reasons stated, the judgment of the circuit court is due to be, and it hereby is, reversed and the cause remanded for entry of judgment consistent with this opinion.
REVERSED AND REMANDED.
All the Justices concur.
[1] The following quotation from Wright Miller does recognize some authority for converting a Rule 12 (f) motion to strike aninsufficient defense into one for summary judgment:
 "[T]he 1948 amendments to Rule 12 expressly authorized the conversion of Rule 12 (b)(6) and Rule 12 (c) motions into summary judgment motions but did not include a comparable provision for Rule 12 (f) motions to strike an insufficient defense. . . .
 "If matters outside the pleadings were freely presented and considered, motions under Rule 12 (f), especially those testing the legal sufficiency of a defense, might be transformed into motions testing the factual or evidentiary, as well as the legal, basis for the challenged pleading and would serve much the same function as a motion for summary judgment. Even though Rule 12 (f) probably was not intended to serve this function, it is difficult to distinguish the role of the motion to strike an insufficient defense
from that of the Rule 12 (b)(6) and Rule 12 (c) motions in terms of the desirability of permitting their conversion into summary judgment motions. Consequently, the absence of a conversion provision in Rule 12 (f) covering challenges to insufficient defenses makes little sense and probably is the result of a happenstance of timing — the conversion provisions in Rules 12 (b)(6) and 12 (c) were inserted at the same time the motion to strike an insufficient defense was formally recognized and the possibility of extending the practice to the latter context may have been overlooked. Thus, it is not surprising that some courts, when faced with affidavits on a Rule 12 (f) motion to strike a defense have treated the motion to strike as one for partial summary judgment." (Footnote omitted. Emphasis added.) 5 Wright Miller, Federal Practice and Procedure, § 1380 at 789.
Nevertheless, we have found no authority for treating the grant of a motion to strike an amendment adding a party plaintiff to the complaint as a judgment on the pleadings under Rule 12 (c) or as a partial summary judgment. Nor does it appear from Key's motion to strike that "matters outside the pleadings were freely presented and considered," with the exception of legal conclusions drawn by Key in his motion.
 "All well-pleaded facts are taken as admitted on a motion to strike, but conclusions of law or fact do not have to be treated in that fashion. Matter outside the pleadings normally is not considered on a Rule 12 (f) motion. . . ." (Footnotes omitted.) Id. at 787-788
[2] We make this assumption because these legal principles of redemption were strongly argued in detailed briefs submitted to the trial court by counsel for Key in support of Key's motion directed to this issue, all of which are made part of the record on this appeal.
[3] Although the Smiths named Brunson as a party defendant, claiming that Brunson (and therefore Dominex) was estopped from asserting any redemptive rights because of the warranty deed executed by Brunson prior to foreclosure, the Court dismissed Brunson as a defendant in the Smith complaint. Moreover, a determination of the invalidity of this warranty deed is implicit in the final judgment. See the discussion ante in Part III (B).