THOMAS, Judge.
Asset Preservation, LLC ("Asset"), appeals from a summary judgment entered by the Baldwin Circuit Court in favor of Oak Road West, LLC ("Oak Road"). We affirm.
Background
In 2014, Humphrey Investments, LLC, executed a mortgage in favor of Quality First Financial, Inc., which was secured by certain property that is located in Gulf Shores ("the disputed property"). On March 26, 2015, Quality First Financial, Inc., foreclosed upon the mortgage and purchased the disputed property at a foreclosure sale. On August 19, 2015, Steven G. Humphrey, an "authorized member" of Humphrey Investments, LLC, executed two documents in favor of Oak Road, each entitled "Assignment of Statutory Right of Redemption"; Steven Humphrey executed one of those documents on his own behalf and the other on behalf of Humphrey Investments, *580 LLC (Steven Humphrey and Humphrey Investments, LLC, are hereinafter referred to collectively as "the assignors").[1] On August 24, 2015, Quality First Financial, Inc., executed a warranty deed conveying its interest in the disputed property to Oak Road.
On March 23, 2016, Steven Humphrey executed a quitclaim deed, individually and on behalf of Humphrey Investments, LLC, conveying their interests, "including the right of redemption," in the disputed property to Asset. Two days later, Asset initiated an action in the circuit court seeking to redeem the disputed property pursuant to § 6-5-248, Ala. Code 1975, and alleging, among other things, that Oak Road had committed waste by making unnecessary permanent improvements on the disputed property and that Asset was therefore unable to ascertain the lawful charges it was required to pay to redeem the property. Thus, Asset requested, among other things, that the circuit court determine the correct amount of lawful charges that it was required to pay to redeem the property.
Oak Road responded to Asset's claims by submitting a motion for a summary judgment on "two completely independent bas[e]s." (emphasis in original.) First, Oak Road asserted that, because the assignors had already assigned their statutory redemption rights to Oak Road when it acquired the disputed property in August 2015, Asset could not have acquired a statutory right to redeem the disputed property via the subsequently executed quitclaim deed referenced in its complaint. Second, Oak Road argued that, even assuming that Asset had acquired a statutory right of redemption, Oak Road was nevertheless entitled to a judgment as a matter of law because Asset had failed to tender the redemption price or, alternatively, had failed to request a statement of lawful charges before the expiration of the redemption period.
Asset submitted a response to Oak Road's motion in which it asserted, among other things, that Oak Road could not rely upon the assignors' assignments of their statutory redemption rights because Oak Road had not recorded the assignments, as Asset contended was required under Alabama law. Asset also admitted that it had not tendered the redemption price or requested a statement of lawful charges but argued that it was not "statutorily required" to do so because there was a "bona fide disagreement as to what are permanent improvements and the value therein."
Oak Road thereafter submitted a "supplemental brief in support of its motion for [a] summary judgment" in which it argued that Asset could not avail itself of the protection afforded by Alabama's recording statutes because, it asserted, those statutes protected only bona fide purchasers, Asset was merely a quitclaim grantee, and quitclaim grantees are not bona fide purchasers as a matter of law. Asset submitted a response to Oak Road's supplemental brief in which it argued that it was permitted to redeem the disputed property notwithstanding the assignors' prior assignments of their statutory rights of redemption to Oak Road because, Asset *581 contended, "[t]he statutory right of redemption, like a license[,] can be assigned as many times as the assignor desires, unless otherwise limited, until one of the assignees exercises the right, as required by statute."
On May 19, 2016, the circuit court entered an order granting Oak Road's summary-judgment motion without specifying the reason for its decision. Asset filed a postjudgment motion on June 18, 2016, and the circuit court entered an order on August 9, 2016, denying Asset's postjudgment motion. Asset filed a timely notice of appeal to the Alabama Supreme Court. The appeal was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
Standard of Review
"The pertinent facts are not in dispute, and, therefore, this action must be resolved by applying the applicable law to the undisputed facts. 'Where only a question of law is presented, a case is appropriate for a summary judgment.' Finch v. Auburn Nat'l Bank of Auburn, 646 So.2d 64, 65 (Ala. Civ. App. 1994) ; see also Bice v. Indurall Chem. Coating Sys., Inc., 544 So.2d 948, 952 (Ala. 1989) ('The uncontroverted facts offered below in support of and in opposition to the motion for summary judgment present a question of law appropriate for resolution by summary judgment.'). " '[O]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court's review is de novo.' " Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala. 1999) (quoting Ex parte Graham, 702 So.2d 1215, 1221 (Ala. 1997) ).
Hardin v. Metlife Auto & Home Ins. Co., 982 So.2d 522, 524 (Ala. Civ. App. 2007). Furthermore, when the summary-judgment movant has presented the trial court with multiple alternative bases for a favorable judgment and "the trial court [has] not specif[ied] the ground upon which it based its summary judgment in favor of [the movant], the law in Alabama is clear that this Court is bound to sustain a trial court's judgment if there is a valid basis for it." Hughes v. Allenstein, 514 So.2d 858, 860 (Ala. 1987).
Analysis
On appeal, Asset argues that the circuit court's judgment should be reversed because, it contends, it acquired the assignors' statutory rights of redemption via the March 23, 2016, quitclaim deed and properly exercised that right by filing its complaint in the circuit court. Oak Road argues that the circuit court's judgment should be affirmed, either because it had already acquired the assignors' statutory rights of redemption before they executed the quitclaim deed to Asset or because Asset did not properly assert its statutory right of redemption by failing to timely request a statement of lawful charges. Notably, Asset does not argue on appeal that the assignors' assignments of their statutory rights of redemption to Oak Road were somehow invalid; rather, it insists that the assignors' conveyance of their statutory rights of redemption via the quitclaim deed to Asset was also valid. Thus, the dispositive issue regarding Oak Road's first argument is whether the assignors' execution of the quitclaim deed effectively assigned to Asset their statutory rights to redeem the disputed property.
"When real property in Alabama is mortgaged, the legal title passes to the mortgagee and the mortgagor retains the equity of redemption, which he may convey. First National Bank of Mobile[] v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala. 1981).... Unlike the equity of redemption, which exists prior to foreclosure and is deemed an interest *582 in the property, the statutory right of redemption arises after foreclosure and is a mere personal privilege conferred by statute; it is not property or a property right."
Dominex, Inc. v. Key, 456 So.2d 1047, 1052-53 (Ala. 1984). Section 6-5-248 provides, in relevant part:
"(a) Where real estate, or any interest therein, is sold the same may be redeemed by:
"....
"(5) Any transferee of the interests of the debtor or mortgagor, either before or after the sale. A transfer of any kind made by the debtor or mortgagor will accomplish a transfer of the interests of that party."
Citing Dominex, supra ; Garvich v. Associates Financial Services Co. of Alabama, Inc., 435 So.2d 30 (Ala. 1983) ; First Colbert National Bank v. Security Federal Savings and Loan Association, 411 So.2d 786 (Ala. 1982) ; Flirt v. Kirkpatrick, 278 Ala. 61, 175 So.2d 755 (1965) ; Stevenson v. King, 243 Ala. 551, 10 So.2d 825 (1942) ; Upchurch v. West, 234 Ala. 604, 176 So. 186 (Ala. 1937) (overruled on another ground by Dominex, supra ) ; Chess v. Burt, 87 So.3d 1201 (Ala. Civ. App. 2011) ; and Deutsche Bank National Trust Co. v. Citibank, N.A., 806 F.Supp.2d 1212 (M.D. Ala. 2011), Asset argues that
"[t]he statutory right of redemption is a mere personal privilege, clearly assignable, that can be exercised by 'any vendee or assignee of the right of redemption under this Code.' Dominex, Inc. v. Key, 456 So.2d 1047[, 1053] (Ala. 1984) [ (quoting former § 6-5-230, Ala. Code 1975 ) ] .... The statutory language and case law does not restrict or otherwise limit the number of times the personal privilege can be assigned but does limit the statutory right to only those identified parties, the hierarchy of redemption rights[,] and exactly how the right must be exercised by the prescribed mode, manner, and time provisions."
(Emphasis in original.)
Oak Road responds by noting that none of the cases upon which Asset relies stand for the proposition that a particular mortgagor can effectively convey its statutory right of redemption to multiple sequential assignees. In support of its position, Oak Road relies upon Warren v. Gallagher, 252 Ala. 621, 42 So.2d 261 (1949), in which our supreme court considered whether a trial court had properly allowed a third party to intervene in a pending action. In so doing, the supreme court summarized the action at issue by stating:
"[The action] was a suit in equity by [Ellison] against [Warren], seeking the enforcement of a statutory right of redemption of real estate after foreclosure of a mortgage. The petition to intervene was filed after Warren had acquired all the right which Ellison sought to enforce by deeds of conveyance. The effect of such conveyance was to cancel Ellison's claim of right to redeem, if he had a right to enforce it. The result of the conveyance to Warren by Ellison, if valid, was by the complainant to the principal respondent and served to place Ellison where he could no longer prosecute the suit, and justified an abatement of it. So that Ellison has destroyed his right to prosecute the suit by his conveyance, and no one is asserting the right to do so by an assignment from him."
252 Ala. at 622, 42 So.2d at 262. Thus, Oak Road contends, "once the [assignors] assigned their statutory right of redemption to Oak Road on August 19, 2015, the [assignors] no longer possessed any enforceable right of redemption, neither to exercise it themselves nor to assign it to Asset."
*583 Oak Road also points to the much more recent case of Richardson v. Stanford Properties, LLC, 897 So.2d 1052 (Ala. 2004), in which our supreme court affirmed the trial court's denial of a petition to redeem real property after a foreclosure sale because the original mortgagor, from whom the purported redemptioner had acquired a statutory right of redemption, had failed to vacate the disputed property within 10 days of receiving a demand from the purchaser that she do so, as required by § 6-5-251, Ala. Code 1975, to avoid forfeiture of her statutory right of redemption. In so doing, the supreme court concluded that the purported redemptioner's statutory right to redeem the property was contingent upon the original mortgagor's compliance with § 6-5-251, and stated:
"If [the purported redemptioner] had 'a totally new and separate right to redeem, unaffected by the notice given to his predecessor,' [the purchaser] argues, then, theoretically, following a demand upon [the purported redemptioner] to vacate, [the purported redemptioner] 'could assign his right to redeem to Jane Doe; who, upon being served notice to vacate could assign to someone else; and on and on.' ... Such a rule would, [the purchaser] insists, 'pervert[ ] the law and obstruct[ ] the rights of the foreclosing mortgage company and the foreclosure purchaser in the property.' ... We agree."
897 So.2d at 1058-59.
As mentioned above, we also note that "the equity of redemption, being a property right which exists before foreclosure, is terminated by a conveyance of that right." Huie v. Smith, 236 Ala. 516, 519, 183 So. 661, 663 (1938) (emphasis added); see also Dominex, 456 So.2d at 1053 ("[B]ecause only those with an interest in the property can redeem, a mortgagor who has conveyed his equity of redemption cannot seek to redeem the property, before or after foreclosure." (Emphasis added)). However, "[t]he statutory rights of redemption... are mere personal privileges and not property or property rights." § 6-5-250, Ala. Code 1975 (emphasis added). Our research has revealed no caselaw explicitly discussing whether a mortgagor can effectively convey the "personal privilege" of statutory redemption to different sequential assignees under § 6-5-248(a)(5).
However, " '[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.' " Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992) ). As noted above, the second sentence of § 6-5-248(a)(5) provides that "[a] transfer of any kind made by the debtor or mortgagor will accomplish a transfer of the interests of that party." (Emphasis added.) Black's Law Dictionary defines "transfer" as: "Any mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance." Black's Law Dictionary 1727 (10th ed. 2014)(emphasis added).
Thus, the plain language of § 6-5-248(a)(5) indicates that, through their August 19, 2016, assignments to Oak Road, the assignors had transferred their statutory rights of redemption to Oak Road and had effectively disposed of and parted with those interests in the disputed property, such that they could not subsequently convey those dispossessed interests to Asset via the quitclaim deed that was executed on March 23, 2016. Our interpretation of *584 § 6-5-248(a)(5) is consistent with the supreme court's discussion in Richardson:
"Assignments are governed by § 6-5-248(a)(5), codified from Act No. 88-441, § 2(a)(5). Act No. 88-441 was enacted on the suggestion of the Alabama Law Institute to remedy perceived 'complexit[ies]' in the former statutory scheme and 'obtuseness' in the construction of the scheme found in Alabama caselaw. [Harry] Cohen, [The Statutory Right of Redemption in Alabama: A New Statute Is on the Horizon, 39 Ala. L. Rev. 131,] 157 [ (1987) ]. The language of § 6-5-248(a)(5) differs from the assignability provision of its predecessor, Ala. Code 1975, § 6-5-230, in a number of respects. ...
" Section 6-5-230 and other provisions of the former scheme 'included [an order] of priorities among those entitled to redeem from foreclosure. The provisions of prior statutes relating to priority of rights of redemption were eliminated with the adoption of [Act No. 88-441].' Jesse P. Evans III, Alabama Property Rights and Remedies § 35.5, at 642 (1994) (footnotes omitted). However, for the purposes of this case, the most remarkable change in statutory language was the addition of the second sentence, which states that an assignment merely 'will accomplish a transfer of the interests of [the transferring] party.' (Emphasis added.)
"... It is difficult to imagine why the Legislature, in writing § 6-5-248(a)(5), included the second sentence, other than to declare or emphasize that the mortgagor's assignee simply stands in the shoes of the mortgagor, at least as to the respective positions of the mortgagor and foreclosure-sale purchaser at the time of the assignment. See Nissan Motor Acceptance Corp. v. Ross, 703 So.2d 324, 326 (Ala. 1997) (assignee 'steps into the shoes of the assignor,' acquiring the 'same rights, benefits, and remedies that the assignor possesses'); Watts[ v. Rudulph Real Estate, Inc. ], 675 So.2d [411,] 413 [ (Ala. 1996) ] (the right acquired by the assignee of a statutory right of redemption is 'limited to the right [the assignor] had when he executed the [assignment]')."
897 So.2d at 1058 (final emphasis added). Through the August 19, 2016, assignments, Oak Road "stepped into the shoes" of the assignors and acquired their statutory rights of redemption, and the assignors could not have thereafter conveyed those rights to Asset.
Thus, although we acknowledge the legislature's expression in § 6-5-250 that "[t]he statutory rights of redemption ... are mere personal privileges and not property or property rights," we do not view that declaration as an indication that the legislature intended to prohibit judicial application of "[t]he prevailing principle in this state ... that the grantee of an estate takes no greater estate in the property than the grantor can convey" to assignments of statutory rights of redemption under § 6-5-248(a)(5). Potter v. Owens, 535 So.2d 173, 175 (Ala. Civ. App. 1988). To construe § 6-5-248(a)(5) to mean that a mortgagor can, under Alabama law, effectively assign its statutory right of redemption to a potentially unlimited number of persons would resurrect the "complexity" and "obtuseness" in our caselaw that the legislature sought to remedy by implementing Act No. 88-441, § 2(a)(5), now codified as § 6-5-248(a)(5). See Richardson, supra. We therefore decline Asset's invitation to so construe § 6-5-248(a)(5) in this case, and the circuit court's summary judgment in Oak Road's favor is due to be affirmed.
Because the circuit court did not specify the reason for its decision, and because the *585 circuit court's summary judgment in favor of Oak Road was properly entered based on Oak Road's assertion that Asset had not acquired a statutory right of redemption, we do not consider whether the alternative basis proffered by Oak Road would have also supported a summary judgment in its favor. See Hughes, supra.
AFFIRMED.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

The record is not clear as to what interest, if any, Steven Humphrey had in the disputed property; however, because the parties do not contend that resolution of the issues on appeal are impacted by any disparity of interest the assignors might have had in the disputed property and because both assignors executed the relevant documents purporting to transfer their redemption rights in the disputed property, we, like the parties, will treat the assignors as if each possessed the statutory right to redeem the property. See Ex parte Professional Bus. Owners Ass'n Workers' Comp. Fund, 867 So.2d 1099, 1101 (Ala. 2003) ("Generally, an appellate court is limited to considering only those issues raised on appeal.").