179 So. 229

### RODGERS et al. v. STAHMER.
#### 6 Div. 139.

Supreme Court of Alabama.
Feb. 17, 1938.

J. M. Kilpatrick and W. Marvin Scott, both of Cullman, for appellants.

H. H. Kinney, of Cullman, for appellee.

BOULDIN, Justice.

The provisions of our statutes are quite explicit in defining the terms and conditions upon which the statutory right of redemption shall be exercised, and when the party entitled to redeem may go into equity to enforce such right.

He must "pay or tender to the purchaser or his vendee the purchase money; with interest at the rate of ten per cent per annum thereon, and all other lawful charges, with legal interest." Section 10145, Code 1923.

If the party entitled to redeem does not know the amount to be tendered, a written demand may be made upon the purchaser or his vendee for a statement in writing of the debt and all lawful charges claimed by him.

If such itemized statement is not furnished within ten days after such demand is made, the purchaser or vendee is penalized with a forfeiture of all compensation for improvements, and a bill in equity may be filed to enforce the statutory right of redemption without a tender. Section 10144.

Section 10146 authorizes the filing of a bill in case the purchaser refuses to convey when proper tender is made.

Section 10147 defines the essentials of a bill under section 10144, and of a bill under section 10146. A bill under the latter section must follow up the tender by paying into court the amount necessary to redeem.

But if filed under section 10144, that is to say, without a tender, because of failure to furnish the required statement on demand, the bill need only offer to pay the sums required to redeem, and invoke the jurisdiction of the court to adjust all the rights and equities of the parties.

A bill which does not allege a tender, nor noncompliance with a demand for a statement of the amount to be tendered, is demurrable, unless a good excuse for noncompliance with these requirements is disclosed by the bill. Lacy v. Fowler, 206 Ala. 679, 91 So. 593; Slaughter v. Webb, 205 Ala. 334, 87 So. 854; Johnson v. Davis, 180 Ala. 143, 60 So. 799; Foerster v. Swift, 216 Ala. 228, 113 So. 31; Johnson v. Williams, 212 Ala. 319, 102 So. 527; Davis v. Ashburn, 224 Ala. 572, 141 So. 226.

Courts of equity, in keeping with the general policy of redemption statutes, namely, the prevention of the sacrifice of real estate by forced sales, have excused the literal compliance with these statutes, and entertained bills for statutory redemption in a variety of cases, wherein, because of some fault of the party from whom redemption is sought, compliance would be useless, or, for any reason, not the fault of the redemptioner, it becomes impractical to comply. Hudson v. Morton, 231 Ala. 392, 165 So. 227; Dorrough v. Barnett, 216 Ala. 599, 114 So. 198; Cummings v. Vann, 215 Ala. 488, 111 So. 229; Foerster v. Smith, supra; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67; Fellows v. Burkett, 219 Ala. 601, 122 So. 808; Ewing v. First National Bank of Montgomery, 228 Ala. 307, 153 So. 243.

The bill, as last amended, seeks to effectuate a statutory right of redemption from a mortgage foreclosure sale.

The mortgagor, John Rodgers, died before foreclosure. Ed Stahmer, the mortgagee, purchased at the sale, being thereunto authorized by the mortgage.

In the amended bill, all the heirs of the mortgagor join as complainants.

It nowhere avers any tender, nor any statutory demand for an itemized statement of the amount claimed for redemption, before the filing of the original bill.

The averments which appear to be relied upon to excuse noncompliance with the statutes are substantially these:

The foreclosure was August 7, 1933. On January 5, 1934, H. B. Rodgers, one of the heirs, claimed and asserted his right of redemption, and paid $100.

On same date he and O. L. Sims, not one of the heirs, entered into a lease sale contract for a term of two years from January 5, 1934, at and for the sum of $1,027, payable $200 with interest December 1, 1934, balance $827 with interest December 1, 1935.

When the $200 payment came due, the bill complains that Stahmer evaded H. B. Rodgers so that he could not make the payment on the due date; but, it is averred, that on January 19, 1934, the payment was made covering the sum then due, and interest on the entire debt, aggregating $282.15, for which the lessor-vendor gave a receipt for said sum as "payment on the John Rodgers place 200 acres."

The lease sale contract contained two conflicting provisions touching the execution of a quitclaim deed. In the body of the instrument setting forth the terms of the transaction, it was stipulated that on payment of the $200 installment and interest on the entire debt on or before December 1, 1934, the lessor should execute the quitclaim deed and accept a mortgage for $827, balance of the purchase money due December 1, 1935.

By the last paragraph of the lease sale contract it was stipulated the quitclaim deed should be executed after full payment of both installments on the dates they become due, etc.

It is averred that on making the payment of $282.15 above, the lessees demanded the execution of the quitclaim deed in compliance with the first-mentioned clause; that Stahmer promised to execute the deed within a few days, that repeated demands were made, and the matter put off from time to time running into June, 1935, and again in the fall of 1935.

But the original bill in this cause was filed February 21, 1935, little more than a month after the payment of $282.15.

The amended bill, filed in 1937, seems to have been drawn in entire disregard of the rule that the relief sought turns on the state of facts existing at the time the original bill was filed.

The bill as amended charges in general terms that the lessees were fraudulently overreached in fixing the lease sale price largely above the amount due for redemption; that a fraud was perpetrated in inserting the conflicting stipulations as to when the quitclaim deed would be executed.

The theory of the bill seems to be that the heirs, including the lessees, may treat the lease sale as a nullity, rely on the original statutory right of redemption, obtain credit of the $282.15, and redeem on payment of balance, alleged to be not exceeding $700, which sum was paid into court in 1937.

We need not concern ourselves with the sufficiency of allegations of fraud.

It does not appear that any one raised any question as to the validity and obligation of the lease sale contract before the filing of the bill. The original bill filed by heirs not a party to it makes no mention of such a transaction. Indeed, it is manifest that so far as that transaction was concerned, the lessees were trying to get a deed thereunder when the bill was filed. No one, so far as appears from the bill, had sought a redemption, other than as embodied in that instrument, when the original bill was filed.

Certainly the purchaser was entitled to know some one was seeking redemption on terms now sought before he is subjected to a bill in equity for noncompliance with demands never made on him. He was, so far as appears, available at all times to receive a tender, or to be served with the statutory demand to furnish a statement of amount claimed for redemption. The bill was filed nearly six months before the expiration of the time for redemption; ample time to advise respondent of any purpose to rescind the lease sale contract, or the claim of heirs, other than lessees, to exercise their right of redemption regardless of the lease sale contract.

The bill discloses no good excuse on the part of complainants, nor any of them, for failing to make a tender, or else a demand for a statement which, if correct, would fix the amount to be tendered, or, if incorrect and unjust, give ground for equitable intervention.

The amended bill does not seek to enforce equities, if any, under the lease sale contract, as we read it; at any rate does not contain allegations appropriate to such relief.

There was no error in sustaining respondent's demurrers to the amended bill.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.