On Application for Rehearing
The application for rehearing is overruled. The opinion of August 4, 1995, is withdrawn and the following is substituted therefor.
This case involves an attempted redemption of real property. Bobby Ray Watts and Paula Jean Watts commenced this action by filing a complaint to redeem certain property from the purchaser, Rudulph Real Estate, Inc., on October 19, 1993. Rudulph denied in its answer that the Wattses had complied with the appropriate statutes entitling them to redeem the property and further alleged in its answer that the Wattses were barred from bringing the action because of a lack of standing. Rudulph also counterclaimed, requesting damages for mesne rents and occupation by the Wattses from the date of foreclosure.
After an ore tenus hearing, the trial judge entered a final judgment, dated September 20, 1994. The trial judge ruled in favor of Rudulph, holding that the Wattses, by not surrendering possession of the property within the 10-day limit required by statute, had forfeited their right to redeem. The Wattses appealed.
On July 31, 1987, Charles L. Dunn took title to a parcel of real property that includes the Wattses' home. The Wattses have lived in the home continuously since 1971. It is their sole residence, and they continued to live in it after Dunn took title. The Wattses conveyed title to the real estate to Dunn, who mortgaged the property to National Bank of Commerce ("NBC") and took the proceeds of a loan secured by the mortgage as payment for legal fees owed him by Mrs. Watts. Apparently, Dunn and the Wattses had an informal arrangement by which the Wattses agreed to make the monthly payments on the loan and that when the loan was paid off Dunn would reconvey the property to the Wattses. The Wattses made all the regular payments due on the mortgage during the loan term. The loan required a balloon payment at the end. The Wattses could not make the balloon payment, and on August 10, 1993, NBC foreclosed on the mortgage. Rudulph Real Estate, Inc., purchased the property at the foreclosure sale. On August 10, 1993, the day of the foreclosure, Rudulph delivered a letter to Dunn, as the record owner of the property, demanding that he abandon the premises. On August 19, 1993, Dunn conveyed all his right, title, claim, and interest in the property to the Wattses by statutory warranty deed. On that same day, the Wattses sent Rudulph a letter, requesting from Rudulph an itemized statement of all lawful charges claimed by Rudulph and stating their intent to exercise their statutory right of redemption. On the following day, August 20, 1993, after the Wattses had received no response from Rudulph, the Wattses' attorney made his best calculation of the redemption price. The Wattses personally delivered a second letter that same day, accompanied by a check in the amount of $24,415.40, stating their intent to redeem the property. On August 27, 1993, Rudulph sent the Wattses a letter containing a statement itemizing all lawful charges regarding the property. The letter also stated that the correct "redemption price" was $24,551.88 — $136.48 above the amount sent by the Wattses — and with the letter Rudulph returned the check for $24,415.40 to the Wattses. The letter stated that by failing to surrender possession of the property they had forfeited their right of redemption. On that same day the Wattses delivered a third letter to Rudulph, with a check for $24,551.88. Rudulph subsequently returned that check also.
The Wattses sued on October 19, 1993, to enforce the right of redemption or to quiet title to the real property. Rudulph counterclaimed for ejectment and mesne rents. The trial court held: (1) that Dunn had assigned the right to redeem the property when he conveyed it to the Wattses on August 19, 1993, but (2) that the Wattses had forfeited the right to redeem the property by failing to surrender possession of the property within 10 days after the foreclosure on August 10, 1993.
The issues in this case are (1) Did the Wattses have the right to redeem the real property? (2) If so, did they properly exercise *Page 413 
that right to redeem? and (3) Did the purchaser exercise due diligence and deliver a timely statement of charges?
The trial court correctly held that the statutory warranty deed executed by Dunn to the Wattses was a proper assignment of Dunn's statutory right to redeem the mortgaged property. However, that right was limited to the right Dunn had when he executed the deed. Ala. Code 1975, § 6-5-251(a), states: "The possession of the land must be delivered to the purchaser or purchaser's transferees by the debtor . . ., within 10 days after written demand for the possession has been made by, or on behalf of, the purchasers [sic] or purchaser's transferees." Failure to comply with § 6-5-251(a) results in a loss of the right of redemption. Ala. Code 1975, § 6-5-251(c). Therefore, the Wattses had only until August 20, 1993, to either surrender possession of the property, in order to maintain their statutory right to redeem the property, or to pay the redemption price to Rudulph. It is undisputed that the Wattses were still in possession of the property after August 20, 1993.
The fundamental question is: When the Wattses tendered the first check on August 20, 1993, did they, by tendering that check, maintain their statutory right to redeem? This Court has held that redemption statutes will be liberally construed in favor of redemption. "[W]hile their terms are not to be extended by implication beyond what the legislature has authorized or intended, the construction in any case of doubt or ambiguity should be in favor of the right to redeem."Cox v. Junkins, 431 So.2d 497, 499 (Ala. 1983), quoting 59 C.J.S. Mortgages § 819, p. 1564. This court stated in Garvichv. Associates Financial Services Co., 435 So.2d 30, 33
(Ala. 1983):
 " 'Courts of equity, in keeping with the general policy of redemption statutes, namely, the prevention of the sacrifice of real estate by forced sales, have excused the literal compliance with these statutes, and entertained bills for statutory redemption in a variety of cases, wherein, because of some fault of the party from whom redemption is sought, compliance would be useless, or, for any reason, not the fault of the redemptioner, it becomes impractical to comply.' "
Quoting Rodgers v. Stahmer, 235 Ala. 332, 333, 179 So. 229, 230
(1938).
The extent of the redemptioner's flexibility was clarified inPurcell v. Smith, 388 So.2d 525 (Ala. 1980). Under Ala. Code 1975, § 6-3-251, the purchaser has 10 days to respond to the redemptioner's demand for a statement of all debts and lawful charges. In Purcell, this Court held that the running of that 10-day limit began on the day the demand was received. The Court rejected the argument that the 10-day period should begin on the date the demand is placed in the mail. This Court stated:
 "Since the forfeiture [sic; preservation] of important rights depends upon the timeliness of a response, the purchaser cannot be penalized by the uncertainties of the mails and the burden rests on the redemptioner to make a written demand, by whatever mode, within the statutory time limit."
388 So.2d at 528-29. The important right at stake for the purchaser was the purchaser's right to claim improvements on the property that would be forfeited by a failure to respond within the 10-day limit. The Court based its holding inPurcell on Hale v. Kinnaird, 200 Ala. 596, 76 So. 954 (1917). In Hale, the purchaser mailed the itemized statement of charges after the 10-day limit; this Court held that the tardiness excused the redemptioner's failure to make a timely tender. The Court in Purcell quoted Hale:
 " 'If she mailed the [statement of lawful charges] on said latter date [within the ten-day period], and it was delayed in transmission through the mails to April 24th [seven days after the expiration of the ten-day period], the burden of compliance resting on her, the delay must affect her right, rather than that of him who made the demand under the statute. The written demand was delivered to her in person. To insure a due reply, under the statute, she should have shown due diligence toward statutory compliance.' 200 Ala. at 600, 76 So. at 958. Although this statement is dictum and speaks to the converse duty of the purchaser to timely respond, *Page 414 
the rationale is persuasive for our holding. . . ."
388 So.2d at 528. Both Purcell and Hale stand for the proposition that the purchaser and the redemptioner each should show "due diligence," so that the other party is not deprived of an important property right.
Applying that standard to the facts in this case, we must conclude that Rudulph Real Estate did not act with due diligence. The Wattses' attorney calculated the redemption price without the purchaser's itemized cost statement. The Wattses asked Rudulph on August 19, by personal delivery, to provide a full itemization of liabilities. On the day they received the lawful right to act, by the conveyance from Dunn, they acted. Rudulph was able to send a demand letter on the very day of foreclosure, yet was somehow unable to provide the itemization requested by the Wattses until eight days after the Wattses had made their request. The Wattses personally delivered to Rudulph a check they thought would cover the redemption amount. The Wattses also stated their intent to immediately tender any remaining cost, and their attorney guaranteed the payment of any remaining cost. The Wattses did all they could to redeem the real property and did so within the 10-day limit. There is no question that they made their effort in good faith. The only reason their redemption efforts were not full and exact was Rudulph's failure to provide the itemization and Rudulph's refusal to accept any of the Wattses' good faith attempts at redemption.
In this case, the redemptioners did all they could to comply with the 10-day limit, and they clearly had the capacity to fully redeem. The only reason for a failure of redemption is the inaction of the purchaser. Further, the redemptioner has the important property right of redemption at stake, a particularly important right when it involves the redemptioner's home. In this case that right was put at risk by the behavior of the purchaser. At the same time, the actions of the redemptioners did not place at risk the purchaser's property right to have the full redemption price paid. The combination of these factors excuses the redemptioners from exact compliance with the 10-day limit on surrendering possession. Even though Rudulph delivered the itemization within the statutory 10-day period, Rudulph's knowledge that the redemptioner's 10-day period for redemption had expired undermines any argument that Rudulph's delivery was made in good faith.
The Wattses' important property right of redemption should not be forfeited because of a lack of due diligence on Rudulph's part. Therefore, the Wattses were excused from exact compliance. Their failure to surrender possession of the property did not forfeit their right to redeem the property. We caution, however, that this opinion should not be interpreted as providing a redemptioner the right to offer a token sum to the purchaser as redemption, with an offer to pay the rest after the 10-day limit has run. This opinion does not focus on the dollar amount tendered, although the dollar amount in this case is one factor considered in determining whether a good faith effort to redeem has been made. Rather, it focuses on the good faith and due diligence — or the lack thereof — of both the redemptioners and the purchaser. This opinion addresses the timing of the purchaser's response to a request for itemization, in light of the 10-day redemption period and whether that response represents due diligence. This opinion does not challenge any of the trial court findings of fact.
Accordingly, the judgment of the trial court is reversed and the cause is remanded.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
ALMON, HOUSTON, INGRAM, and BUTTS, JJ., concur. *Page 415