Pat Richardson, legal counsel for Marie Hunt, appeals from an order denying his petition to redeem real estate mortgaged by Hunt and purchased by Stanford Properties, LLC ("Stanford"), at a mortgage foreclosure sale. We affirm. *Page 1053 
The facts of this case are not in dispute. At a foreclosure sale on October 3, 2002, Stanford purchased property mortgaged by Hunt to NationsCredit Financial Services Corporation ("NationsCredit"). In a certified letter mailed to Hunt the same day, Stanford notified Hunt of the purchase and demanded that Hunt surrender possession of the property "in 10 days or by October 13, 2002." The demand was given pursuant to Ala. Code 1975, § 6-5-251, which provides, in pertinent part:
 "(a) The possession of the land must be delivered to the purchaser . . . by the debtor or mortgagor if in their possession or in the possession of anyone holding under them by privity of title, within 10 days after written demand for the possession has been made by, or on behalf of, the purchasers. . . .
". . . .
 "(c) Failure of the debtor or mortgagor or anyone holding possession under him or her to comply with the provisions of this section forfeits the right of redemption of the debtor or one holding possession under the debtor."
(Emphasis added.)
On October 8, 2002, Richardson, on behalf of Hunt, sued Stanford and NationsCredit, challenging the validity of the "foreclosure sale and any deed made pursuant thereto" and seeking, among other things, a temporary restraining order ("TRO") "stay[ing] the running of the time provided by [§6-5-251(a)] for [Hunt] to redeem her property from the . . . foreclosure sale, in the event [the sale was] found to be valid, pending the final judgment of the court" ("the Hunt case"). The same day, Madison Circuit Judge Bruce Williams entered a TRO temporarily staying the operation of § 6-5-251(c) pending a hearing, conditioned on the posting by Hunt of a $10,000 bond.
On the following day, October 9, 2002, Hunt executed a quitclaim deed, purporting to convey the property to Richardson. The deed stated: "This conveyance includes the statutory rightof redemption of the above-described real property from sale of same on mortgage foreclosure by or on behalf of [NationsCredit], conducted October 3, 2002." (Emphasis added.) Also on October 9, 2002, Hunt and Richardson, as principal and surety, respectively, executed and filed the $10,000 bond ("the injunction bond").
It is undisputed that the conveyance from Hunt to Richardson, her legal counsel, was intended to serve as security to Richardson, who served as surety on the injunction bond. This intention was specifically set forth in the following letter from Richardson to Hunt, dated October 9, 2002:
 "Attached is a copy of a deed conveying your property at 421 Ewing Street to me. You are executing the deed as security to me as surety on your injunction bond
to stay [Stanford] from requiring you to give it possession of your house and preserving your right
to redeem it from the foreclosure sale which occurred on October 3, 2002. The deed grants to me the right to redeem the property in the event the court rules against you in the [Hunt case], thereby giving [NationsCredit] and [Stanford] the right to collect damages under your injunction bond. The deed will not be filed with the Probate Office unless and until the court so rules."
(Emphasis added.)
A hearing was conducted in the Hunt case on October 30, 2002. At the hearing, Richardson did not inform the court or Stanford of the quitclaim conveyance, or of the purported conditionalassignment of Hunt's redemption rights to Richardson. On the contrary, he represented to the *Page 1054 
court that Hunt, as the mortgagor, possessed the right of redemption. In that connection, the following colloquy occurred:
 "Q. [Stanford's counsel:] Ms. Hunt, are you willing to redeem the property out of foreclosure as stated in your complaint?
"A. [Hunt:] Yes.
"Q. Do you have the funds to do so?
 "A. I don't understand why you are asking me that question.
 "Q. I am asking that question because in the complaint filed in this case by your attorney, in paragraph 19, it states that `plaintiff desires to redeem her property from said sale and is willing and able to do so.'
"A. I guess the answer is `yes,' then.
"Q. So, you have the funds to redeem that?
"A.I —
 "[By Richardson:] May the court please. She is able to redeem without having the money in the bank. Counsel well understands she can borrow the money if she has adequate equity in the property to do so."
(Emphasis added.) On November 13, 2002, Judge Williams dissolved the TRO and denied Hunt's request for a preliminary injunction.
Richardson, on Hunt's behalf, filed a "motion to reconsider," in which he stated, in pertinent part: "By the vacating of the temporary restraining order [Hunt] has lost her right to redeemthe property. . . ." (Emphasis added.) On December 20, 2002, the court held a hearing on Hunt's motion. On December 24, 2002, Judge Williams denied the motion.
By a letter dated January 15, 2003, Richardson — for the first time — notified Stanford's counsel that he claimed a right to redeem the property. Specifically, he stated:
 "Please convey to your client . . . this request, pursuant to Alabama Code [1975,] § 6-5-252, for a statement of all charges claimed by [Stanford] for redemption of the property referred to above, which [Stanford] purchased on the mortgage foreclosure sale of same by [NationsCredit] October 3, 2002.
 "I intend to redeem said property pursuant to [Ala. Code 1975,] § 6-5-248(a)(5), by virtue of a conveyance to me by Marie Hunt of said property, including her statutory right of redemption, by instrument executed October 9, 2002."
(Emphasis added.)
Stanford challenged Richardson's right to redeem the property on the ground that Hunt's right of redemption had "terminated due to her failure to vacate the subject premises within 10 days of [the] demand to do so." Richardson responded in a letter dated January 22, 2003, stating, in pertinent part:
 "In response to your January 20, 2003, letter I enclose a copy of the instrument Marie Hunt executed on October 9, 2002, conveying to me all of her right, title and interest in the subject property, expressly including her statutory right of redemption. You will note that Ms. Hunt executed this instrument while she still retained her statutory right of redemption."
(Emphasis added.)
In a separate action commenced on January 23, 2003 ("the Stanford case"), Stanford sued Hunt to "recover possession" of the property. Hunt failed to respond to the pleading in that case, and, on May 13, 2003, Madison Circuit Judge Joseph Battle entered an order ejecting her from the property. *Page 1055 
On February 5, 2003, Stanford filed a motion in the Hunt case seeking "attorney fees incurred by it in defense of [Hunt's] action brought by a party who had knowingly conveyed her interest in the subject property prior to or shortly after the initiation of [the] action." Stanford also filed a "Motion to Determine that [Hunt's] Right of Redemption of the Subject Property Ha[s] Been Terminated." Hunt filed a response, "admit[ting] that her right of redemption ha[d] been terminated." On May 13, 2003, Judge Williams held that Hunt's right of redemption had terminated, and he awarded Stanford attorney fees.
Meanwhile, on March 20, 2003, Richardson filed a "petition for right of redemption," commencing this action against Stanford. The petition sought a judgment ordering Stanford to honor Richardson's asserted right of redemption. On February 24, 2004, Madison Circuit Judge Loyd Little entered a final judgment against Richardson on the basis of "stipulated facts" and exhibits. This appeal is from that judgment.
The resolution of this appeal involves a construction of provisions of Act No. 88-441, Ala. Acts 1988, codified at Ala. Code 1975, §§ 6-5-247 to -257 (repealing and superseding Ala. Code 1975, §§ 6-5-230 to -246), which establishes the statutory right of redemption in Alabama. Section 6-5-248(a) catalogs the authorized redemptioners:
 "(a) Where real estate, or any interest therein, is sold the same may be redeemed by:
"(1) Any debtor, including any surety or guarantor.
 "(2) Any mortgagor, even if such mortgagor is not personally liable for payment of a debt.
"(3) Any junior mortgagee, or its transferee.
"(4) Judgment creditor, or its transferee.
 "(5) Any transferee of the interests of the debtor or mortgagor, either before or after the sale. A transfer of any kind made by the debtor or mortgagor will accomplish a transfer of the interests of that party.
 "(6) The respective spouses of all debtors, mortgagors, or transferees of any interest of the debtor or mortgagor, who are spouses on the day of the execution, judgment, or foreclosure sale.
 "(7) Children, heirs, or devisees of any debtor or mortgagor."
(Emphasis added.)
"[T]he statutory right of redemption is a personal privilege
conferred on those persons who are specifically identified in the statute. The right to redeem, which is created when a foreclosure . . . occurs, is not property, and it is alienableonly [insofar as] the legislation permits a conveyance of the right." Harry Cohen, The Statutory Right of Redemption inAlabama: A New Statute Is on the Horizon, 39 Ala. L.Rev. 131, 134 (1987) (emphasis added; footnotes omitted). See also § 6-5-250 ("The statutory rights of redemption given or conferred by this article are mere personal privileges and not property or property rights.").
The parties agree that Richardson's rights as the assignee of Hunt, the mortgagor, if any, derive from § 6-5-248(a)(5). They further agree that Hunt forfeited her right to redeem by failing to surrender possession of the property to Stanford within 10 days of Stanford's written demand, as required by § 6-5-251(a) and (c). However, Richardson contends that his right of redemption is not subject to forfeiture, because, he insists,he has never been in possession of the property. He argues that § 6-5-251 "only applies to persons in *Page 1056 
possession." Richardson's brief, at 16-17 (citing Gooden v.Bonner, 292 Ala. 415, 295 So.2d 402 (1974)). Stanford, on the other hand, contends that Richardson cannot escape the Code section's forfeiture provision, because, it argues, although Richardson was never in possession, he "assumed [Hunt's] place," Stanford's brief, at 15, that is, he took his assignment from Hunt after the foreclosure sale and the demand upon her forsurrender, and, therefore, he took the assignment subject tothe condition that she surrender possession of the property within the statutory period.
As explained in Richardson's October 9, 2002, letter to Hunt, Hunt assigned her right of redemption to Richardson, her attorney, to enable her to remain in possession of the property throughout her litigation over the validity of the foreclosure sale, while "preserving [her] right to redeem it" beyond the 10-day statutory period. In that connection, Richardson says: "If the court in Ms. Hunt's wrongful foreclosure matter had found in favor of Ms. Hunt instead of NationsCredit, Mr. Richardson could not pursue redemption because the right of redemption does not exist without a foreclosure." Richardson's brief, at 13. Thus, the issue is whether a mortgagor in possession of the mortgaged real estate may, following a foreclosure sale and demand by the purchaser to surrender possession, assign to her legal counsel her right of redemption, free of her obligation to vacate the premises within the 10-day period provided in § 6-5-251, while her legal counsel litigates the validity of the foreclosure sale. We hold that she cannot.
Richardson cites only two cases in which the courts of Alabama have interpreted the provisions of Act No. 88-441 that are pertinent to this case: Watts v. Rudulph Real Estate, Inc.,675 So.2d 411 (Ala. 1996), and McGowan v. Clayton, 679 So.2d 1136
(Ala.Civ.App. 1996). To the extent those cases are applicable,they support Stanford's position.
Richardson cites Watts for the proposition that "redemptioners' acting in good faith and a purchaser's not acting with due diligence excused the redemptioners' precise compliance with § 6-5-251." Richardson's brief, at 18 (emphasis added). In Watts, however, the redemptioners actually tendereda check to the purchaser for the amount they calculated as theredemption price within 10 days of the purchaser's demand that they surrender possession. 675 So.2d at 412. The purchaser rejected that offer and subsequent offers by the redemptioners.Id. This Court held that the redemptioners, "by tendering [their first] check, maintain[ed] their statutory right to redeem," 675 So.2d at 413, in light of the purchaser's "refusal to accept any of the [redemptioners'] good faith attempts at redemption." 675 So.2d at 414.
In this case, Richardson made no comparable tender. Stanford demanded surrender of the property on October 3, 2002. Richardson responded by filing the Hunt case, which challenged the validity of Stanford's claim by means of requests for a TRO, a preliminary injunction, and a declaratory judgment. Until January 15, 2003, that is 22 days after the trial court denied Richardson's "motion to reconsider" its vacatur of the TRO in the Hunt case and more than three months after Stanford's demand that Hunt surrender possession of the property, Richardson had not informed Stanford or the trial court of his alleged right, as Hunt's assignee, to redeem. The "good faith" rule touted by Richardson is inapplicable here.
McGowan provides Richardson even less support than doesWatts. In McGowan, Patricia Knight and Keith Knight obtained a judgment of divorce, which resolved possession of their mortgaged *Page 1057 
marital home. 679 So.2d at 1137. The judgment granted Patricia the right to reside in the home, "until she remarried or until all of the parties' minor children married, became self-supporting, or reached the age of 19, whichever occurred first." 679 So.2d at 1137. Upon the occurrence of the earliest of those events, the home was to be "sold and the proceeds from the sale divided equally between the parties." 679 So.2d at 1137-38. Keith was to make the mortgage payments. 679 So.2d at 1138.
When Keith defaulted on the mortgage payments, the home was purchased at a foreclosure sale by James Clayton, Patricia's father. Although Clayton served both Keith and Patricia a written demand for surrender of possession, Patricia remained on the premises, allegedly with Clayton's permission. 679 So.2d at 1138. Months later, "Keith assigned to James McGowan his statutory right to redeem the property." 679 So.2d at 1138. Ultimately, McGowan sued Patricia and Clayton, seeking a judgment "enforc[ing] his right to redeem the property."679 So.2d at 1138.
Patricia and Clayton moved for a summary judgment. The trial court granted the motion, holding that "`[a]lthough Keith Knight was not in possession of [the] property,'" he forfeited his statutory right by "under[taking] no action to remove Patricia . . . from [the] property to protect his right of redemption.'"679 So.2d at 1138. Because Keith's right had expired at the time of the assignment, the court concluded, McGowan received nothing in the assignment. Id.
The Court of Civil Appeals agreed with the trial court and affirmed the summary judgment. The Court of Civil Appeals held that, although Keith was not residing on the property, "he had a duty to remove Patricia from the property after foreclosure in order to protect his statutory right of redemption."679 So.2d at 1140. Because of his failure to do so, the court concluded, his "attempt to assign his right of redemption to McGowan was ineffective." 679 So.2d at 1139. The court explained:
 "There is no question that after foreclosure, a debtor or mortgagor may transfer or assign his statutory right of redemption. See § 6-5-248(a)(5), Ala. Code 1975. However, the mortgagor or debtor must first secure his or her statutory right of redemption before it may be transferred. . . .
". . . .
 "In order to secure his statutory right of redemption after foreclosure, Keith was required to remove Patricia, his cotenant, from the property and to surrender possession of the property to Clayton.
. . .
". . . .
 ". . . [T]he fact that Clayton allowed Patricia to remain in the home did not operate to prevent Keith from demanding that she leave, in order to protect his statutory right of redemption. We note that if Keith had made such a demand, and Patricia had refused, a genuine issue of material fact might have been created as to whether Keith's statutory right of redemption had been forfeited. However, the record reveals that Keith made no such demand; thus, as a matter of law, he clearly forfeited his right to redeem the property."
679 So.2d at 1139-40 (emphasis added).
Because McGowan stands for the propositions (1) that a redemptioner need not be resident on the land to be subject to § 6-5-251, and (2) that a mortgagor who fails to perfect her own statutory right of redemption has nothing to assign pursuant to § 6-5-248(a)(5), the case does not support *Page 1058 
Richardson's position. Indeed, the fact that Richardson has never been in possession of the property is not dispositive. His rights indisputably arise by assignment from a mortgagor, who refused to surrender possession.
Assignments are governed by § 6-5-248(a)(5), codified from Act No. 88-441, § 2(a)(5). Act No. 88-441 was enacted on the suggestion of the Alabama Law Institute to remedy perceived "complexit[ies]" in the former statutory scheme and "obtuseness" in the construction of the scheme found in Alabama caselaw. Cohen, supra, at 157. The language of § 6-5-248(a)(5) differs from the assignability provision of its predecessor, Ala. Code 1975, § 6-5-230, in a number of respects. The former section provided, in pertinent part:
 "Where real estate . . . is sold under . . . power of sale in a mortgage, the same may be redeemed by the debtor, junior mortgagee, vendee of the debtor or assignee of the equitable or statutory right of redemption, wife, widow, child, heir at law, devisee or any vendee or assignee of the right of redemption under this Code from the purchaser or his vendee. . . ."
By comparison, § 6-5-248(a)(5), provides: "Where real estate, or any interest therein, is sold the same may be redeemed by. . . . [a]ny transferee of the interests of the debtor or mortgagor, either before or after the sale. A transfer of any kind made by the debtor or mortgagor will accomplish a transfer of the interests of that party."
Section 6-5-230 and other provisions of the former scheme "included [an order] of priorities among those entitled to redeem from foreclosure. The provisions of prior statutes relating to priority of rights of redemption were eliminated with the adoption of [Act No. 88-441]." Jesse P. Evans III, AlabamaProperty Rights and Remedies § 35.5, at 642 (1994) (footnotes omitted). However, for the purposes of this case, the most remarkable change in statutory language was the addition of the second sentence, which states that an assignment merely "willaccomplish a transfer of the interests of [the transferring]party." (Emphasis added.)
"`There is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.'" Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App. 1997) (quoting 82 C.J.S. Statutes § 316, at 551-52 (1953)). See also McDonald v. State, 32 Ala.App. 606, 609, 28 So.2d 805, 807
(1947) ("A legislature will not be presumed to use language without any meaning or application. . . ."). It is difficult to imagine why the Legislature, in writing § 6-5-248(a)(5), included the second sentence, other than to declare or emphasize that the mortgagor's assignee simply stands in the shoes of the mortgagor, at least as to the respective positions of the mortgagor and foreclosure-sale purchaser at the time of the assignment. SeeNissan Motor Acceptance Corp. v. Ross, 703 So.2d 324, 326 (Ala. 1997) (assignee "steps into the shoes of the assignor," acquiring the "same rights, benefits, and remedies that the assignor possesses"); Watts, 675 So.2d at 413 (the right acquired by the assignee of a statutory right of redemption is "limited to the right [the assignor] had when he executed the [assignment]").
If Richardson had "a totally new and separate right to redeem, unaffected by the notice given to his predecessor," Stanford argues, then, theoretically, following a demand upon Richardson to vacate, Richardson "could assign his right to redeem to Jane Doe; who, upon being served notice *Page 1059 
to vacate could assign to someone else; and on and on." Stanford's brief, at 12. Such a rule would, Stanford insists, "pervert the law and obstruct the rights of the foreclosing mortgage company and the foreclosure purchaser in the property."Id. We agree.
To be sure, the Code provision requiring surrender of possession to the purchaser within 10 days of a written demand "contradict[s] the great majority of statutes in the country
that grant the mortgagor-debtor possession during the statutory redemptive period." Cohen, supra, at 149 (emphasis added; footnote omitted). Nevertheless, the Alabama Legislature has included such a provision in every codification of statutory redemption since the Code of 1852. Hunt may not do indirectly what the Legislature prohibits her from doing directly. Specifically, she may not circumvent § 6-5-251 by assigning her interest to her legal counsel, so that she might remain on the property while he litigates the validity of the foreclosure sale.
Thus, Richardson acquired no greater — or different — rights than the rights Hunt possessed on October 9, 2002, the date of the assignment. On that date, Hunt had only a defeasiblepersonal right that would expire upon her failure to surrender possession by October 13, 2002. Hunt assigned Richardson the same defeasible personal right, which was contingent on Stanford'srecovery of possession by October 13, 2002. Assuming, without deciding, that the 10-day period was suspended by the TRO and
by the subsequent motion to reconsider the denial of the request for a preliminary injunction in the Hunt case, Richardson's right expired, at the latest, five days after December 24, 2002, the date of the denial of the motion to reconsider, because, as previously stated, Hunt was not evicted from the property until May 13, 2003.
For these reasons, the trial court did not err in denying Richardson's petition for right of redemption. The judgment of the trial court is affirmed.
AFFIRMED.
NABERS, C.J., and HOUSTON, LYONS, and STUART, JJ., concur.
JOHNSTONE, J., recuses himself.