I concur in the main opinion. I write specially to clarify my understanding of Ala. Code 1975, § 25-5-11.
Under Ala. Code 1975, § 25-5-11(a), if a third party is found liable for an injury to an employee, then "[t]o the extent of the recovery of damages against the other party, the employer shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury or death." "Compensation" is defined in § 25-5-1(1) as "[t]he money benefits to be paid on account of injury or death . . ."; however, expressly excluded from the definition of compensation are "medical and surgical treatment and attention, medicine, medical and surgical supplies, and crutches and apparatus furnished an employee on account of an injury." Thus, the statutory right of the employer to "reimbursement" does not include a right to reimbursement for medical expenses paid to, or on behalf *Page 88 
of, the employee. Liberty Mutual paid for Ronald D. Trott's medical treatment, and because the payment was for medical treatment, Liberty Mutual is not entitled to "reimbursement" under § 25-5-11(a).
Section 25-5-11(a) does provide that "the employer shall be entitled to subrogation for medical and vocational benefits expended by the employer on behalf of the employee. . . ." Thus, under § 25-5-11(a), Liberty Mutual has a subrogation right. Under the circumstances of the case before us, however, this right is of no value to Liberty Mutual. "Under the general principles of subrogation[,] a subrogee steps into the shoes of its subrogor and that subrogee only gets those rights that its subrogor has. The subrogee can have no greater rights."Star Freight, Inc. v. Sheffield, 587 So.2d 946, 958 n. 5 (Ala. 1991). In this case, Ronald D. Trott, the employee, is deceased, and, therefore, has no right to the recovery of medical expenses under Alabama law. As the main opinion explains,
 "[m]edical expenses, such as those Liberty Mutual seeks to recover here, are compensatory in nature and are not recoverable by a plaintiff in a wrongful-death action. . . .
 ". . . .
". . . Because Liberty Mutual would not be able to recover medical expenses from Indiana Mills and Manufacturing if it were to step into Trott's shoes in the wrongful-death action, we hold that Liberty Mutual's right to subrogation under §25-5-11(a) similarly would not allow the recovery of medical benefits from the proceeds of Trott's wrongful-death action."
972 So.2d at 84-S7. All such rights to recover medical benefits have been extinguished and replaced by the right to punitive damages measured only by the wrongfulness of the act that caused the death. See Ala. Code 1975, § 6-5-410;Huckaby v. East Alabama Med. Ctr., 830 F.Supp. 1399,1403 (M.D.Ala.1993) ("It is only where the plaintiff has filed a personal injury action before his death, and then
dies, that both the wrongful death and personal injury claims may be maintained."); Airheart v. Green, 267 Ala. 689,692, 104 So.2d 687, 690 (1958) ("`[Wrongful-death] damages are entirely punitive, imposed for the preservation of human life. . . . The punishment by way of damages is intended not alone to punish the wrongdoer, but as a deterrent to others similarly minded.'" (quoting Liberty Nat'l Life Ins. Co. v.Weldon, 267 Ala. 171, 190, 100 So.2d 696, 713 (1957))). Thus, Liberty Mutual, as the subrogee of Trott's rights, has no claim for Trott's medical expenses.
Liberty Mutual argues that this Court should construe the term "subrogation" to mean "reimbursement," thereby allowing it to recover its medical expenses out of the judgment in the wrongful-death action; however, the legislature is presumed to know the difference between the terms "reimbursement" and "subrogation." Bean Dredging, L.L.C. v. Alabama Dep't ofRevenue, 855 So.2d 513, 517 (Ala. 2003) ("[This Court] will presume that the Legislature knew the meaning of the words it used when it enacted the statute."). I note that the legislature uses the terms "reimbursement" and "subrogation" in the same paragraph, indicating that, though well aware of the possibility that it could again use the term "reimbursement," it chose instead to use term "subrogation" when it defined the employer's claim to medical expenses. We presume that when the legislature uses two different terms, it means two different things.[4] *Page 89 
Because Alabama's wrongful-death statute permits recovery of only punitive damages, it may be that just as death benefits are reimbursable from a punitive-damages award in a wrongful-death action, other funds paid to or on behalf of the insured also should be reimbursable from the award, or it may be that the right to recover for medical expenses should survive the death of the insured; however, "the legislature, and not this Court, has the exclusive domain to formulate public policy in Alabama." Boles v. Parris,952 So.2d 364, 367 (Ala. 2006). "Matters of policy are for the Legislature and, whether wise or unwise, legislative policies are no concern to the courts." Marsh v. Green, 782 So.2d 223,231 (Ala. 2000).
I, therefore, concur in the main opinion.
STUART and BOLIN, JJ., concur.
[4] Richardson v. Stanford Props., LLC,897 So.2d 1052, 1058 (Ala. 2004) ("`"There is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used."`" (quotingSheffield v. State, 708 So.2d 899, 909
(Ala.Crim.App. 1997), quoting in turn other sources)).