MOORE, Judge.
 

 Patricia Williamson appeals from a judgment entered by the Talladega Circuit Court allowing Russell David Pruitt to redeem, in accordance with the provisions of Ala.Code 1975, § 6-5-247 et seq., certain real property located in Talladega County (“the property”) that was purchased by Patricia Williamson at a foreclosure sale on March 1, 2005. We affirm.
 

 Facts and Procedural History
 

 Before March 1, 2005, Pruitt owned the property subject to a mortgage in favor of “The Bank,” which was subsequently renamed “Superior Bank” (hereinafter “the bank”). Pruitt defaulted on the mortgage, and the bank foreclosed. Patricia Williamson (“Patricia”) purchased the property at the foreclosure sale for $20,000. Patricia testified that she had written a check for the purchase price on her and her husband’s joint checking account and that her husband, Ben Williamson (“Ben”), had signed the check. At the time of the trial, Ben and Patricia had been married for 46 years. Patricia testified that, two or three weeks after the foreclosure sale, she received the foreclosure deed that had been executed in March 2005. Both Patricia and Ben testified that they did not record the deed.
 

 Pruitt testified that in early January 2006 he decided to redeem the property. He testified that, beginning in January 2006, he had gone to the Talladega County probate office to look for a foreclosure deed once a week. He testified that he did not know the exact sale price but that he had heard it was $25,000. On January 11, 2006, Pruitt mailed a letter to the bank; in that letter, Pruitt stated his intention to redeem the property and requested infor
 
 *864
 
 mation regarding the sale of the property. Steve Hamm, the president of the bank, testified that he forwarded the letter to Steve Grand in the bank’s special assets department in Birmingham. Hamm testified that the normal operating procedure was for Grand to contact Pruitt. Pruitt testified that no one from the bank contacted him.
 

 Pruitt testified that Ben had told him that he had purchased the property. Todd Edwards, Pruitt’s cousin and Ben’s nephew, also testified that, within one or two days after the foreclosure sale, Ben had told him that he had purchased the property; Edwards then relayed that information to Pruitt. Based on this information, Pruitt sent a letter to Ben on February 1, 2006, by both certified mail and regular mail. Pruitt testified that the certified letter had not been accepted but that the letter sent via regular mail had not been returned. Pruitt testified that Ben had not contacted him in response. Ben testified that in February 2006 he had gotten a notice that he had a certified letter but that he had not gone to the post office to claim it. He testified that he did not receive a letter from Pruitt by regular mail.
 

 Pruitt testified that he had visited the bank on three occasions requesting information on who had purchased the property and the amount that had been paid for it; he testified that each time he was told that that information was not available. Pruitt then decided to hire an attorney. Pruitt’s attorney mailed the bank a letter dated February 14, 2006; in that letter, Pruitt’s attorney again gave notice of Pruitt’s intent to redeem the property and requested the name and address of the person to whom the property had been sold and the sale price. On February 14, 2006, Pruitt’s attorney also sent a certified letter to Ben notifying him of Pruitt’s intent to redeem the property and requesting a statement of the debt and all lawful charges, pursuant to Ala.Code 1975, § 6-5-252. Ben testified that he had not accepted that letter because it had been addressed to “Benard Williamson” and not to “Ben Williamson” or “Benjamin Williamson.”
 

 In response to the February 14, 2006, letter, Grand mailed Pruitt’s attorney a letter stating that Patricia had purchased the property for $20,000 and that the mortgage foreclosure deed had been sent to Talladega County for recording on March 3, 2005. Pruitt testified that he had not learned that Patricia had purchased the property until he received a copy of the letter his lawyer had received from the bank and had forwarded to him. Thereafter, on February 20, 2006, Pruitt’s attorney sent a certified letter to Patricia notifying her of Pruitt’s intent to redeem the property and requesting a statement of the debt and all lawful charges. Patricia testified that, without looking at the letter, she had told the postman to send the letter back.
 

 Ben testified that he and Patricia had done some work on the property but that they do not live on the property. He testified that there is a locked gate blocking access to the property and that the house on the property is not visible from the public road. Ben testified that he sees Pruitt almost daily and that Pruitt had never told him that he wanted to redeem the property. Pruitt, however, testified that he felt he had done everything in his power to determine who had purchased the property and to provide them the appropriate notice of his intent to redeem the property within the statutorily prescribed period. Pruitt testified that he is ready, willing, and able to redeem the property.
 

 A second foreclosure deed dated February 16, 2006, was recorded in the Tallade-ga County probate office on February 21,
 
 *865
 
 2006. Both Patricia and Ben testified that they had never seen the second foreclosure deed.
 

 On February 28, 2006, Pruitt filed a complaint for redemption of the property. In his complaint, Pruitt requested that the court ascertain the amount of the debt and lawful charges necessary to redeem the property and offered to pay such amount to redeem the property. Patricia filed an answer to the complaint. After an ore tenus hearing, the trial court entered a judgment on May 24, 2007, setting forth the following conclusions of law:
 

 “13. The Supreme Court of Alabama held in the case of
 
 Bobby Ray Watts and Paula Jean Watts vs. Rudolph Real Estate, Inc.,
 
 675 So.2d 411[, 413] (Ala.1996) as follows:
 

 “ ‘This Court has held that redemption statutes will be liberally construed in favor of redemption. “[WJhile their terms are not to be extended by implication beyond what the legislature has authorized or intended, the construction in any case of doubt or ambiguity should be in favor of the right to redeem.”
 
 Cox v. Junkins,
 
 431 So.2d 497, 499 (Ala.1983), quoting 59 C.J.S.
 
 Mortgages
 
 § 819, p. 1564. This court stated in
 
 Garvich v. Associates Financial Services Co.,
 
 435 So.2d 30, 33 (Ala.1983):
 

 “ ‘ “Courts of equity, in keeping with the general policy of redemption statutes, namely, the prevention of the sacrifice of real estate by forced sales, have excused the literal compliance with these statutes, and entertained bills for statutory redemption in a variety of cases, wherein, because of same fault of the party from whom redemption is sought, compliance would be useless, or, for any reason, not the fault of the redemptioner, it becomes impractical to comply.”
 

 “‘Quoting
 
 Rodgers v. Stahmer,
 
 235 Ala. 332, 333, 179 So. 229, 230 (1938).’
 

 “Continuing in the
 
 Watts
 
 [, 675 So.2d at 414,] case, the Supreme Court further stated as follows:
 

 “ ‘Both
 
 Purcell [v. Smith,
 
 388 So.2d 525 (Ala.1980),] and
 
 Hale [v. Kinnaird,
 
 200 Ala. 596, 76 So. 954 (1917),] stand for the proposition that the purchaser and the redemptioner each should show “due diligence,” so that the other party is not deprived of an important property right.’
 

 “14. [Patricia] intentionally did not record the Mortgage Foreclosure Deed even though she acknowledged the importance of recordation. [She] intentionally refused to accept certified letters wherein [Pruitt] was seeking redemption of the real property. [Patricia’s] husband wrote the check in payment of the real property and he also refused to accept mail seeking redemption of the real property. [Patricia], and the [bank], took actions that clearly hindered the redemption process. This Court finds that there was a clear lack of due diligence on the part of [Patricia] and that [Pruitt] is entitled to redeem the real property that is described in the attached Exhibit ‘A’ that is incorporated by reference as if set forth fully herein.
 

 “15. The Court finds that the literal compliance by [Pruitt] with Title 6, Chapter 5, Section 253, of the 1975 Code of Alabama is excused under the circumstances in this case. The Court finds that [Pruitt] is entitled to redemption in accordance with this Order.
 

 “16. [Pruitt] is entitled to redeem the real property by paying to [Patricia] the purchase price sum of $20,000.00, plus all ad valorem taxes paid since the 1st day of March, 2005, together
 
 *866
 
 with interest at the rate of 12% per annum on the $20,000.00 and taxes paid for the purpose of redeeming the real property. The ad valorem taxes are public record and are readily ascertainable as a lawful charge in this case. That said sum shall be paid in accordance with this order. That upon payment, [Patricia] shall execute and deliver a statutory warranty deed to [Pruitt] conveying all of her right, title and interest in and to the real property that is described in the attached Exhibit ‘A’.”
 

 On June 7, 2007, Patricia filed a motion for a new trial. After a hearing, the trial court denied that motion on August 7, 2007. Patricia filed her notice of appeal on September 12, 2007.
 

 Discussion
 

 “ ‘ “Courts of equity, in keeping with the general policy of redemption statutes, namely, the prevention of the sacrifice of real estate by forced sales, have excused the literal compliance with these statutes, and entertained bills for statutory redemption in a variety of cases, wherein, because of some fault of the party from whom redemption is sought, compliance would be useless, or, for any reason, not the fault of the redemptioner, it becomes impractical to comply.” ’ ”
 

 Watts v. Rudulph Real Estate, Inc.,
 
 675 So.2d 411, 413 (Ala.1996) (quoting
 
 Garvich v. Associates Fin. Servs. Co.,
 
 435 So.2d 30, 33 (Ala.1983), quoting in turn
 
 Rodgers v. Stahmer,
 
 235 Ala. 332, 333, 179 So. 229, 230 (1938)). “[T]he purchaser and the re-demptioner each should show ‘due diligence,’ so that the other party is not deprived of an important property right.”
 
 Watts,
 
 675 So.2d at 414.
 

 Alabama Code 1975, § 6-5-252, provides:
 

 “Anyone desiring and entitled to redeem may make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her, and such purchaser or their transferees shall, within 10 days after such written demand, furnish such person making the demand with a written, itemized statement of all lawful charges claimed by him or her. The redeeming party must then tender all lawful charges to the purchaser or his or her transferee. If the purchaser or his or her transferee fails to furnish a written, itemized statement of all lawful charges within 10 days after demand, he or she shall forfeit all claims or right to compensation for improvements, and the party so entitled to redeem may, on the expiration of the 10 days, file his or her complaint without a tender to enforce his or her rights under this article and file a lis pendens with the probate court.
 

 “Tender or suit must be made or filed within one year from foreclosure.”
 

 Alabama Code 1975, 6-5-253(a), provides:
 

 “Anyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, with interest ... and all other lawful charges, also with interest .... ”
 

 This court has interpreted these statutes as follows:
 

 “[P]ayment or tender to the purchaser ... is a condition precedent to filing a complaint to redeem the property, unless the redeeming party has a valid excuse for failing tó tender.
 
 See Nichols v. Colvin,
 
 674 So.2d 576 (Ala.Civ.App.1995);
 
 Moore v. Horton,
 
 491 So.2d 921 (Ala.1986). A redeeming party’s ‘inability to ascertain the amounts neces
 
 *867
 
 sary for tender or to be paid, his request for the court to ascertain the true amounts owed, and his offer to pay such amounts before insisting on his right to redeem’ excuse him from the statutory requirement to tender.
 
 Nichols,
 
 [674 So.2d at 579]....
 

 “... ‘There must be an exercise of due diligence on the part of the person seeking redemption to ascertain the proper amount to be tendered.’
 
 Moore,
 
 supra, at 924.”
 

 Davis v. Anderson,
 
 678 So.2d 140, 143 (Ala.Civ.App.1995).
 

 On appeal, Patricia argues that the trial court erred in finding that she owed Pruitt a duty of due diligence to help Pruitt perfect his notice of redemption. She cites
 
 Hudson v. Morton,
 
 231 Ala. 392, 165 So. 227 (1936), for the proposition that her duty was to not act to prevent Pruitt from perfecting his notice of redemption. She further argues that the trial court erred in finding that she had violated a duty she owed to Pruitt because, she says, she did not take any action to prevent Pruitt from perfecting notice of his intent to redeem the property but had merely failed to record the foreclosure deed. We find these arguments unpersuasive.
 

 The trial court did not conclude that Patricia had a duty to exercise due diligence to help Pruitt perfect his notice of redemption. Instead, it concluded that Patricia had a duty to refrain from acting in an unreasonable manner so as to prevent Pruitt from redeeming the property. The trial court found that Patricia had failed to exercise due diligence because she had, in fact, “t[aken] actions that clearly hindered the redemption process.” That finding is supported by the evidence indicating that Patricia had intentionally failed to record the foreclosure deed and the evidence indicating that Patricia and Ben had intentionally refused Pruitt’s letters notifying them, pursuant to § 6-5-252, of his intent to redeem the property and requesting a statement of the debt and all lawful charges.
 

 Moreover, the trial court found that Pruitt was excused from “literal compliance” with § 6-5-253 “under the circumstances in this case.” That finding is supported by the evidence. In early January 2006, Pruitt began trying to ascertain the name of the party who had purchased the property at the foreclosure sale. He repeatedly searched the county probate records for the foreclosure deed, to no avail. He also repeatedly asked the bank for the purchaser’s name but was told that that information was not available. Ben informed Pruitt that he had purchased the property. Thereafter, Pruitt sent multiple letters to Ben, pursuant to § 6-5-252, notifying Ben of his intent to redeem the property and requesting a statement of the debt and all lawful charges. Those letters were refused. After the bank belatedly informed Pruitt that Patricia had purchased the property, Pruitt sent her a letter, pursuant to § 6-5-252, notifying Patricia of his intent to redeem the property and requesting a statement of the debt and all lawful charges. Patricia refused that letter. Further, Ben testified that there is a locked gate blocking access to the property and that the house on the property is not visible from the road; therefore, Pruitt was unable to tell if any improvements had been made to the property.
 

 Because of the aforementioned circumstances, which were “not the fault of [Pruitt],”
 
 Watts,
 
 675 So.2d at 413, Pruitt was unable “ ‘to ascertain the amounts necessary for tender.’ ”
 
 Davis,
 
 678 So.2d at 143 (quoting
 
 Nichols,
 
 674 So.2d at 579). This fact, along with Pruitt’s “ ‘request for the court to ascertain the true amounts owed, and his offer to pay such amounts
 
 *868
 
 before insisting on his right to redeem’ excuse [Pruitt] from the statutory requirement to tender” payment in compliance with § 6-5-253.
 
 Id.
 

 Conclusion
 

 Based on the foregoing, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
 

 THOMAS, J., concurs in the result, without writing.